MORGAN et al. v. JOHNSON, Mayor.

(Circuit Court of Appeals, Eighth Circuit. January 28, 1901.)

No. 1,381.

1. APPEAL—REVIEW—QUESTIONS DETERMINED ON FORMER APPEAL.
   The decision of the circuit court of appeals on a question distinctly presented and passed upon becomes the law of the case, and will not be reconsidered on a subsequent appeal in the same case.

2. DEED—ATTEMPTED IMPEACHMENT BY GRANTOR—EQUITIES OF PARTIES.
   Where a city has undertaken to convey property to one who had a prior equitable claim thereto, receiving the consideration demanded, and has for many years acquiesced in the ownership and possession of the grantee, the conveyance will be sustained by the courts, unless clearly illegal.

3. MUNICIPAL CORPORATIONS—ACTION OF COUNCIL—MODE OF EXECUTING POWER.
   Where the power to dispose of property owned by a city is vested by statute in the city council, the manner of its exercise not being prescribed, the adoption of a motion authorizing and directing the conveyance of property is as efficacious as the passage of an ordinance.

4. SAME—AUTHORIZING CONVEYANCE.
   The city of Denver acquired from the United States the title to certain land, a portion of which had previously been purchased from a claimant by the bishop of·the Catholic Church, and devoted to cemetery purposes. The bishop presented a petition to the city council, setting out such facts, and praying that the council would cause a good deed to be made on behalf of the city conveying the property to him, "as Catholic bishop aforesaid, and to his successors in office, forever." The petition was referred to a committee,.which reported in favor of granting the prayer thereof, and on motion the report of the committee was adopted by a vote of the council. The council had power, under the statutes of the state, to dispose of the property. *Held,* that its action constituted sufficient authority to support a deed executed on behalf of the city conveying the property to the petitioner in consideration of the payment to the city of the amount it had expended in acquiring the title.

5. DEEDS—VALIDITY—CONFORMITY TO AUTHORITY CONFERRED TO EXECUTE.
   The petition having stated the right in which the property was claimed by petitioner, and the purpose for which the title was desired, it was not essential that the deed should declare the trust upon which it was conveyed, but the designation of the grantee by his name and official title, and a recital that the·deed was made by order of the city council, and "for the purposes aforesaid," was a sufficient reference to the petition and proceedings of the council to disclose such trust; nor was the deed invalidated because the habendum clause ran to the grantee, "his heirs and assigns," instead of to his "successors in office," nor because his ecclesiastical title was incorrectly stated.

6. VENDOR AND PURCHASER—RECOVERY OF LAND BY VENDOR—DEFECTIVE DEED.
   A city which has, through its council, legally and effectually authorized a conveyance of property, has received the agreed consideration, and executed a deed by its mayor, under which the grantee has taken and held possession of the property for many years, cannot recover the property by an action in ejectment, on the ground that the mayor was not the proper person to execute the deed, and it is therefore without authority and void, since the grantee is, at least, vested with the equitable title, which a court of equity would protect, by enjoining an action at law, until the city could be required to execute an effective deed.

In Error to the Circuit Court of the United States for the District of Colorado.

This was a suit in ejectment instituted in 1892 by Platt Rogers, as mayor of the city of Denver, against Samuel B. Morgan and some 40 other persons,

grantees of Morgan, for the possession of the S. ½ of the N. E. ¼ of the S. E. ¼ of section 2, township 4, range 68 W., in Arapahoe county, Colo. In the progress of the cause, Henry V. Johnson, present mayor of Denver, and defendant in error herein, was substituted for Platt Rogers, and, by stipulation, the answer of Samuel B. Morgan was made to stand as the answer of all other defendants. On the death of Samuel B. Morgan, Ellen Theresa Morgan, the present leading defendant, and the other heirs at law of Samuel B. Morgan, now plaintiffs in error, were substituted as defendants in his place and stead. The cause was first tried on demurrer to the answer, and resulted in a judgment in favor of the plaintiff for the possession of the land in controversy. A writ of error was sued out, and the cause brought to this court for review. On March 1, 1897, the judgment of the trial court was reversed, and the cause remanded for further proceedings in accordance with the opinion rendered. Morgan v. Rogers, 25 C. C. A. 97, 79 Fed. 577. After the cause was so remanded, plaintiff filed a replication to the answer, and afterwards filed an amended replication, upon which the cause went to trial. The facts appear sufficiently stated in the former opinion of this court, and the conclusion there reached was that by virtue of the acts of congress and the patent of November 15, 1873, referred to in the opinion, the city of Denver acquired an unconditional title in fee simple absolute to a tract of land, including that now in controversy; and that, notwithstanding the act of congress in question authorized the city of Denver to make an entry of the land "to be held and used as a burial place for the said city and vicinity," the patent issued granted to the city such title in fee simple, without condition, as enabled the city to sell and dispose of the land unconditionally, for any purpose deemed by it desirable. The defendants below claimed in their answer that, the city of Denver, having such unconditional fee, on February 6, 1874, conveyed the land in question to Joseph P. Machebeuf, and that on April 25, 1887, Machebeuf conveyed the same to Samuel B. Morgan, the defendants' grantor, and this court held in its former opinion that, if such were the facts, the title to the lands in question was well vested in Morgan. The amended replication filed by plaintiff joined issue on certain averments of the answer, relating to assessments of the land in question for city taxes, and the payment of such taxes by Morgan after he acquired title in 1887, and affirmatively pleads that the deed made by the mayor to Machebeuf, on February 6, 1874, was not made or executed pursuant to, or in conformity with, any vote of the city council of the city of Denver. The balance of the replication, when properly construed, questions the legal sufficiency of the other facts set up in the answer, but does not deny the facts as stated. At the trial below the plaintiff offered in evidence the patent of the United States to Joseph E. Bates, as mayor of Denver, of date November 15, 1873, and rested. The defendants, after an unavailing motion for an instructed verdict, offered in evidence the deed of the city of Denver, by Francis M. Case, mayor, to Joseph P. Machebeuf, of date February 6, 1874. Plaintiff objected to the introduction of this deed, and assigned the following reasons therefor: "That by reason of the act of congress of the United States of date May 21, 1872, entitled 'An act to enable the city of Denver to purchase certain lands in Colorado for cemetery purposes,' the city of Denver and its mayor were without power and authority to convey the lands which were acquired by virtue of the act;" and the further reason "that no ordinance or resolution of the city council of the city of Denver authorizing the conveyance has been shown"; and, further, that "the supposed deed does not conform to the recommendation of the committee to which the matter was sent, and whose report was adopted." For the purpose of a ruling on these objections, it was admitted by counsel that a certain report of proceedings before the city council, as set forth in the answer, and further stated in the admission, was correct. These papers will be referred to later in the opinion. The trial court disapproved of the first and second grounds of objection, but sustained the third, namely, that the deed offered did not conform to the recommendation of the committee to which the matter was sent, and whose report was adopted, and excluded the deed. Other deeds were offered in evidence by the defendants conveying Machebeuf's title to Samuel B. Morgan. Plaintiff's counsel objected to these deeds, on the sole ground that Machebeuf

was not shown to have title. The trial court sustained these objections, and due exceptions were saved by the defendants to such rulings. This statement reduces the case, in its broadest aspect, irrespective of the reasons given by the court below for its actions, to the following questions: First, whether the city of Denver, in view of the supposed condition alleged to have been created by the use of the words in the act of 1872, "to be held and used as a burial place for the said city and vicinity," had power to convey the lands in question without regard to the condition; second, whether there was any resolution or other authority granted by the city council to sell the lands in question to Machebeuf; and, third, whether the deed actually made to Machebeuf conformed to the resolution or authority granted, if any, by the city council.

Willard Teller (Harper M. Orahood, on the brief), for plaintiffs in error.

Tom Herrington (J. M. Ellis, S. L. Carpenter, and Guy Le Roy Stevick, on the brief), for defendant in error.

Before CALDWELL and THAYER, Circuit Judges, and ADAMS, District Judge.

ADAMS, District Judge, after stating the case as above, delivered the opinion of the court.

The decision of this court rendered on the first writ of error (Morgan v. Rogers, supra) is the law of this case. That decision was that the act of congress of May 21, 1872, did not operate to annex any condition to the grant authorized by it, and that the patent to Bates, as mayor, in trust for the city of Denver, and to his successors and assigns, forever, created only a naked, passive trust, under which the entire beneficial use, possession, and control vested at once and absolutely in the city of Denver. That decision satisfactorily and conclusively settled the question that the city of Denver had the right and power to convey the land in question to Machebeuf, and, notwithstanding the elaborate reargument of this question by counsel, no further consideration will now be given to it. Balch v. Haas, 20 C. C. A. 151, 73 Fed. 974, 36 U. S. App. 693, and cases there cited.

The only remaining question is whether the city of Denver did convey the land to Machebeuf. That it recognized a highly meritorious and equitable claim of Machebeuf; that it received the agreed consideration from him therefor; that it undertook to execute a deed to perform its equitable, as well as legal, obligation; that it permitted the Bishop and his grantees to take possession of the land, and exercise rights of ownership and control, for a period of 18 years or more before it questioned their title,—cannot be gainsaid or questioned. Under such circumstances, an insurmountable legal necessity must be found by this court to induce it to disturb the defendant's possession. What is claimed to be that necessity? Substantially stated, it is this: that there was no resolution of the city council authorizing the conveyance to Machebeuf, and that the deed, as made, fails to conform to the resolution claimed to have been adopted.

It appears that on October 28, 1872, Joseph P. Machebeuf, who, as stated by the answer and not denied in the replication, was the bishop of the Catholic Church for the diocese of Denver, presented a petition to the mayor and common council of that city in words and figures as follows:

"To the Honorable the Mayor and Common Council of the City of Denver: Your petitioner, Joseph P. Machebeuf, Catholic bishop of Denver, respectfully represents to your honorable body, on his own behalf and on that of the Catholic Church of Denver and Arapahoe county, that some time in the year 1863 he purchased, for the sum of $200, from one John I. Walley, the following described piece of land, situate in said county of Arapahoe, viz.: The N. E. ¼ of the S. E. ¼ of Sec. 2, T. 4 S., R. 68 W.; and that from the time of said purchase and since hitherto said piece of land has been used and still is used by the members of said Catholic Church of Denver and Arapahoe county as a burial place, and that a great number of their dead are therein buried. And your petitioner further represents that having been informed that the city of Denver has procured from the government of the U. S. a patent of a certain piece of land, including the piece hereinbefore described, to be used as a cemetery, he fears some measures may be taken by your honorable body to lay out and arrange the entire piece of land conveyed as aforesaid to the city of Denver, whereby the disposition and arrangement of said piece hereinbefore described might be greatly disturbed and interfered with, to the detriment of the said members of the Catholic Church in regard to the said land so used by them as a place of burial. Wherefore your petitioner humbly prays that your honorable body may instruct a good deed of conveyance to be made on the part of said city of Denver, by whomsoever is lawfully empowered, in granting and conveying the fee of said piece of land hereinbefore described, unto your petitioner as Catholic bishop aforesaid, and to his successors in office, forever, and your petitioner will ever pray, etc.

"Joseph P. Machebeuf, Bishop of Denver,

"By Edward L. Johnson, His Atty. in Fact.

"Denver, Oct. 28, 1872."

Such proceedings were afterwards had on that petition that on the 4th day of December, 1873, the committee which had been appointed for that purpose reported to the common council of the city of Denver, and to the mayor thereof, in words and figures following:

"To the Honorable Mayor and Council: Your committee find, on examination, that within parties had rights previous to the city, and would recommend that the prayer of the petitioner be granted, and the mayor, in behalf of the city of Denver, is authorized to make them their deed, provided they pay into the city treasury the cost of the land, and which means all actual [———] which the city of Denver has been to in obtaining government title, all of which is respectfully submitted."

Afterwards, and on the 8th day of January, 1874, the committee on public grounds and buildings for the city of Denver, to whom said petition had been referred, reported in the words following:

"The committee on public grounds and buildings of the city of Denver, to whom was referred the petition of the Right Rev. Joseph P. Machebeuf, bishop of the Roman Catholic Church, submit the following report: Denver, Colorado Territory, Jan. 8th, 1874. To the Honorable Mayor and City Council of the City of Denver—Gentlemen: Your committee all report they have examined the foregoing petition, and would recommend the prayer of the petition be granted."

The journal of the city council shows that a motion was made to adopt the report of the committee, and that the motion was carried by a vote of eight in the affirmative to three in the negative; and it further appears, by the uncontradicted averments of the answer, that, in pursuance of said recommendation and vote of the city council, the mayor, on February 6, 1874, executed and delivered a deed to Joseph P. Machebeuf in words and figures as follows:

"This deed, made this 6th day of February, A. D. 1874, between the city of Denver, by Francis M. Case, its mayor, in the county of Arapahoe and terri-

tory of Colorado, of the first part, and the Rt. Rev. Joseph P. Machebeuf, bishop of Colorado, of the county of Arapahoe, territory of Colorado, of the second part, witnesseth: That the said party of the first part, for and in consideration of the sum of fifty dollars to the said party of the first part in hand paid by the said party of the second part, the receipt whereof is hereby confessed and acknowledged, has remised, released, sold, conveyed, and quit-claimed, and by these presents does remise, sell, convey, and quitclaim, unto the said party of the second part, his heirs and assigns, forever, all the right, title, interest, claim, and demand which the said party of the first part has in and to the following described real estate situate, lying and being in the county of Arapahoe and territory of Colorado, to wit, the southwest quarter of section two, township four south, of range 68 west. This deed is made by order of the city council of the city of Denver. To have and to hold the same, to-gether with all and singular the appurtenances and privileges thereto belong-ing, or in any wise appertaining, and all the estate, right, title, interest, and claim whatsoever of the said party of the first part, either in law or equity, to the only proper use, benefit, and behoof of the said party of the second part, his heirs and assigns, forever, for the purposes aforesaid. In witness whereof the said party of the first part, by Francis M. Case, its mayor, has hereunto set hand and seal the day and year above written.

"[Signed]          The City of Denver,     [Seal.]
                "By Francis M. Case, Mayor of Denver."

This deed was duly acknowledged on the day of its date, and after-wards, on February 7, 1874, was duly recorded in the appropriate land records for Arapahoe county.

Addressing ourselves, now, to the first of the remaining objections to the deed to Machebeuf, inquiry must be made whether there was any ordinance or resolution of the city council authorizing the execu-tion of the deed. The petition of the bishop was addressed to the common council of the city of Denver, the duly-constituted body through and by which the city under its organic law alone could exer-cise the power conferred upon it to sell and convey its real estate. Sections 4, 5, City Charter 1866. After setting forth fully his equi-table claim to the lands in question, the bishop closes his petition with the prayer "that your honorable body may instruct a good deed of conveyance to be made on the part of the said city of Denver, by whomsoever is lawfully empowered, granting and conveying the fee of said piece of land hereinbefore described unto your petitioner, as Catholic bishop as aforesaid," etc. This petition was first referred to a special committee, which speedily reported that the bishop and his church had rights superior and antecedent to those of the city, and "recommended that the prayer of the petition be granted" on certain terms, which, for the present purpose, it is unnecessary to repeat. Soon thereafter, for reasons unexplained, the bishop's petition was referred to the committee of the council "on public grounds and build-ings." This committee soon reported that they had examined the petition, and recommended that "the prayer of the petition be grant-ed." The prayer of the petition, so referred to, is thus effectually in-corporated in the committee's report, and this report, as submitted to the council, became, in effect, a recommendation that the council direct a good and sufficient deed to be made conveying the land re-ferred to in the bishop's petition to him as such bishop. The record shows that there was a motion to adopt that report, and that such motion was duly carried. This, in our opinion, constitutes direct and sufficient authority emanating from the city council for the convey-

ance in question. The objection that this authorization was made by motion, instead of by formal resolution or ordinance, is without merit. The city council was empowered by law to act for the city in selling and conveying its property, and there was no requirement that its action should be by ordinance. This court said in Illinois Trust & Savings Bank v. City of Arkansas City, 22 C. C. A. 171, 76 Fed. 271, 34 L. R. A. 518: "It is common learning that where a statute authorizes action by the legislative body of a city, and does not require such action to be taken by ordinance, it may be taken by a vote upon a motion or by the passage of a resolution." In support of this proposition, a large number of cases are cited. The trial court applied this view cf the law, and properly overruled plaintiff's objection to the introduction of the deed for want of authorization.

The only remaining question is whether the deed actually made to Machebeuf conformed to the recommendation and report of the committee so adopted by the city council. It is argued by counsel for the city that if the deed had corresponded to the prayer of the bishop's petition, as recommended by the committee to the council, the grant would have been made to "Joseph P. Machebeuf, Catholic bishop of Denver, and to his successors in office, forever." It is further argued that the petition of the bishop as submitted to the council clearly discloses that he claimed the land for his church, and desired a conveyance to him for that church, but that contrary to the recommendation of the committee as adopted by the council, and in violation of the trust disclosed in the petition, the deed as executed actually named as grantee the "Rt. Rev. Joseph P. Machebeuf, bishop of Colorado, party of the first part," with the habendum clause thus: "To have and to hold all and singular," etc., "to the only proper use, benefit, and behoof of the said party of the second part, his heirs and assigns, forever, for the purposes aforesaid." This objection to the deed, based on the grounds assigned, or either of them, is, in our opinion, without merit. Let it be conceded that the bishop requested a deed to him as trustee for his church, and that the city authorized the execution of a deed for that purpose. It is familiar doctrine that the trust need not necessarily be stated in the deed. A declaration of trust may be contained in a different instrument from that by which the estate is vested in the trustee. Bisp. Eq. (5th Ed.) § 65. The trust under which the bishop was to hold the land was distinctly declared in the petition signed by him, and addressed to the city council. It was referred to in the report of the committee, and in the adoption of that report by the council. It was distinctly recognized in the deed itself. The title was vested in Joseph P. Machebeuf, his heirs and assigns, "for the purposes aforesaid." A careful examination of the deed as made discloses that the words last quoted must necessarily relate to his office named in the deed as bishop of Colorado; in other words, the title as disclosed in the deed is vested in Machebeuf for the purposes of his bishopric.

It is next objected that the habendum clause of the deed in question runs to the party of the second part, "his heirs and assigns, forever," instead of to him and "his successors in office, forever," as stated in the petition to the city council. We think this objection overlooks

the essential purpose to be accomplished by the deed. That was to convey an indefeasible estate in fee simple to the trustee. The apt and usual words for that purpose were employed, namely, to him, "his heirs and assigns, forever." The "heirs and assigns" here mentioned are not words of purchase, but of limitation, and any title which might thereafter be devolved upon them would be subject to the same trust as was created by the deed in the first taker.

It is next objected that the deed was made to the "Rt. Rev. Joseph P. Machebeuf, bishop of Colorado," instead of "Joseph P. Machebeuf, bishop of Denver." From what has already been said, it appears that the purpose of the grant was to convey the property in question to Machebeuf, in trust for his bishopric, as disclosed in his petition to the city council. The fact, if it be a fact, that his true title is "Catholic bishop of Denver" cannot avail to defeat the conveyance to him by his proper name, even though his office may have been inaccurately stated. The only effect of such inaccuracy would be to possibly create some uncertainty as to the beneficiaries under the trust; but this possibility is greatly minimized, if not totally extinguished, by the clear declaration of trust found in contemporaneous and antecedent documents. So far as the city of Denver is concerned, this criticism of the deed, in our opinion, may be conclusively answered by the suggestion that the language criticised is nothing but descriptio personæ, and, even if inaccurate, there is abundant left to clearly fix the identity of the intended grantee. In our opinion, there is no such discrepancy between the authority conferred and the authority executed as to impair the deed in question.

It follows from the foregoing that Joseph P. Machebeuf acquired good title to the lands in question from the city of Denver, and, as the only objection to the other deeds offered in evidence conveying the land from Machebeuf to the defendants was want of title in Machebeuf, such objections should have been overruled, and the deeds admitted.

We refrain from expressing any opinion on the question argued at the bar as to whether the deed from the city of Denver to Machebeuf was executed by the proper officer or agent of the city, because no such question was raised at the trial below. No objection was made to the introduction of the deed to Machebeuf because of any irregularity in its execution, and no assignment of error presents any such question for consideration. We have also not deemed it necessary to pass upon several assignments of error relating to the pleadings or proceedings at the trial, preferring rather to dispose of the case on its merits. It follows from the conclusions reached, and already stated, that the trial court erred in excluding the deeds offered in evidence by defendants, and for that reason the judgment must be reversed.

This cause has now been twice before this court, and we have given all phases of it our most serious attention and consideration, and the conclusions reached and settled by our deliberate judgments on the two writs of error are that the city of Denver had the power to convey the land in controversy to Machebeuf, and that it did so. The deeds offered in evidence at the last trial show that Machebeuf has

conveyed the lands so acquired by him to the defendants in this case. A careful scrutiny of the record shows but one possible issue that might again be submitted to the trial court, and that is whether the city of Denver properly executed the direction of the city council to convey the land in controversy to Machebeuf; in other words, whether the proper agent or officer of the city executed the deed. The facts disclosed by the unchangeable written proof, found in the record, conclusively show that Machebeuf claimed an equitable right to the land in controversy; made his claim known to the city of Denver; secured an effectual authorization by the city council for a conveyance to him; paid an agreed consideration therefor; and received the deed, which, in terms, recites that it "is made by order of the city council of the city of Denver." If, for any reason, the culminating act of executing the deed was irregularly performed,—that is to say, if the deed should have been executed by a commissioner appointed by the city council, as claimed in argument by counsel, instead of by the mayor of the city as done,—it was such a mistake or oversight, in no manner disturbing the fixed rights of the parties, as can be readily corrected by an appropriate equitable proceeding. Inasmuch as a further trial at law of this sole remaining issue could undoubtedly be enjoined until such equitable proceedings could be had, we perceive no reason for remanding this cause for a further trial. The controversy has been pending between the parties for nine years, and during that time all the substantial and meritorious questions of difference between them have been settled. It would avail nothing to pursue the litigation further. The judgment is therefore reversed, and the cause remanded to the trial court, with directions to enter judgment in favor of the defendants.