## CITY OF AUSTIN v. BARTHOLOMEW et al.

## NALLE v. CITY OF AUSTIN.

(Circuit Court of Appeals, Fifth Circuit. March 26, 1901.)

### Nos. 882, 894.

1. APPEAL—REVIEW—DECISION ON FORMER APPEAL—LAW OF THE CASE.
    The decision of a question on a former appeal is the law of the case on a subsequent appeal in the same case.

2. MUNICIPAL CORPORATIONS—RECEIVER OF WATER COMPANY—CLAIM FOR HYDRANTS FURNISHED CITY.
    The receiver of a water company is not entitled to claim on its behalf, from a city which it was to supply with water, payment for a specific number of hydrants, and at the same time demand payment for additional hydrants which were to be furnished free on condition that the hydrants first referred to were paid for.

3. SAME—CHARTER POWER—RIGHT TO RENT HYDRANTS OF WATER COMPANY.
    Austin City Charter, art. 6, § 7, authorizes the city "to construct waterworks; * * * to provide the city with water, * * * and to erect hydrants, fire plugs," etc.; and section 20 empowers the city "to provide for the prevention and extinguishment of fires," etc. Held to authorize it to rent hydrants of a water company for municipal purposes.

4. SAME—WATER COMPANY—ASSIGNMENT OF CONTRACT WITH CITY—VALIDITY —RIGHT TO QUESTION.
    Where a city for more than eight years acquiesced to the fullest extent in the assignment by a water company of its rights and privileges under a contract with the city, and allowed the new company during such time to perform the contract of its assignor, it is too late for the city to question the legality of the assignment for the purpose of avoiding performance of the contract on its part.

5. SAME—IMPLIED CONTRACTS.
    A city, like an individual or private corporation, may bind itself by implied contracts.

**6. Same—Obligations of New Company.**

Where a water company has purchased the property, rights, contracts, privileges, and franchises of another company, and, with a city's consent, proceeded to carry out its predecessor's contract to supply the city with water, the obligations of the city and the new company are correlative, and the latter is as much required to furnish water to the city under the contract with the old company as the city is required to pay for it.

In Error to the Circuit Court of the United States for the Western District of Texas.

On April 13, 1882, the city of Austin entered into a contract with the City Water Company, which contract is the basis of this suit. That contract is set out in full in the statement of facts in the case of Bartholomew v. City of Austin, 29 C. C. A. 568, 85 Fed. 359, and it will consequently be referred to here when necessary without incumbering the statement of the case or the opinion with the entire contract. The City Water Company constructed its waterworks and complied with its contract with the city of Austin, so far as the record shows, without complaint, until June 28, 1887, when the Austin Water, Light & Power Company was organized, and purchased and absorbed the City Water Company. After this latter date the Austin Water, Light & Power Company continued to carry out the contract with the city of Austin, as transferee and assignee of the City Water Company, and the city paid and it received the contract price for the hydrants provided in the contract. In the year 1895 the city of Austin completed the erection of waterworks of its own, and from and after the 31st day of December, 1895, refused to pay the water, light, and power company the rentals for hydrants as stipulated in the contract, or any part of the same. On the 10th day of July, 1893, Joseph Spence was appointed receiver of the Austin Water, Light & Power Company by the circuit court of the United States for the Western district of Texas, and said Joseph Spence was afterwards succeeded as such receiver by E. C. Bartholomew, who was in turn succeeded, after a brief period of joint receivership, by Joseph Nalle, the present receiver. The city having refused to pay rent, as stated, for the hydrants, Bartholomew, as receiver, on the 9th day of January, 1897, brought suit against the city of Austin to recover the rent of 100 hydrants at $100 each per annum, 42 hydrants at $50 each per annum, and 25 hydrants at $50 each per annum, for the year 1896. This case came on to be heard before the circuit court, when a demurrer to the plaintiff's declaration was sustained on the ground that the original contract between the City Water Company and the city of Austin created a monopoly, under the constitution of the state of Texas, and was consequently void, and no recovery could be had thereunder. This decision was brought by writ of error to the circuit court of appeals, and this court, in the case of Bartholomew v. City of Austin, above referred to, reversed the judgment of the court below and remanded the case. After the case was thus remanded the plaintiff filed his first amended original petition, in which he claimed the same rentals claimed in the original bill for the year 1896 for 1897 and 1898, and in addition thereto added a count or additional claim for general damages in the sum of $625,000 for breach of contract on the part of the city, in preventing him from supplying the inhabitants of the city with water. When the case as thus amended came on to be heard in the circuit court at the adjourned term in May, 1899, it resulted in a verdict and judgment for the plaintiff in the sum of $39,925. The amount of this verdict and judgment was for the rental of 100 hydrants for the years 1896, 1897, and 1898 at $100 each per year, and for the rental of 42 hydrants for the same period at $50 each per year. The court rejected by its rulings during the trial and in its charge the claim for the rental of 25 hydrants, and also for general damages for breach of contract on the part of the city, submitting to the jury the question of the right of the receiver to recover for the 100 hydrants at $100 each per year, and the 42 hydrants at $50 each per year. The charge of the court, which largely raises the questions involved, was as follows: "Now, you gentlemen have been advised during the progress of the trial of the issues involved in this suit. You know it is a suit on a contract, and plaintiff seeks

to recover on the contract. That contract is what we would call on the one side, on the part of the plaintiff, 'executory'; that is, to be executed from day to day, from time to time. It has been partially executed, but still, in some of its particulars, is executory on the part of the plaintiff. Now, there are three issues discussed by the gentlemen on either side of this case, and on these three issues I will now suggest to you what the views of the court are: (1) The court is of opinion that the Austin Water, Light & Power Company, who is plaintiff in this suit through its receiver, was the successor generally, by operation of law, of the City Water Company, and also successor to the burdens, mutualities, and reciprocities of the contract between the city of Austin and the City Water Company, which preceded the coming into life of the Austin Water, Light & Power Company, and the successor of the City Water Company for the mutualities of the old company. The contention of the defendant is that, although these propositions be true, yet as matter of law the city has never consented to enter into and be bound by any reciprocities or mutualities of that contract. On that issue I charge you that the city is bound, and you will so find. (2) Passing from that issue to the second one, as to whether or not the plaintiff in this suit has alleged, and is bound by the allegations, that the contract has been breached by both sides, it is necessary for me to charge you on that point. It may be that in the mind of the city, or in the purpose of the city, in some degree, there was an effort to breach the contract. It may be, to some extent if not entirely, that the contract was breached; but that did not destroy the right of the plaintiff in this suit to go on with the contract from its standpoint, and perform its obligations and respond to its duties and recover on the contract. Therefore on that issue I charge you with the plaintiff. (3) Now, the third is the one undisposed of, because my view of the law may not be sufficient to dispose of it, and I will charge you on it. The third is whether or not the plaintiff company complied substantially with its obligations evidenced in the contract. On that issue there is some conflict in the statements of witnesses, and upon that issue you would be allowed to find one way or the other; and on that I charge you, in the line of plaintiff's requested charge, this: 'You are instructed, if you believe from the testimony that plaintiff has maintained during the years 1896, 1897, and 1898 the system of waterworks in his hands as receiver in a condition of efficiency, as to pressure and amount of water, equal to its condition when said plant was accepted by defendant as in compliance with said contract, and was during said period reasonably equipped to furnish, and did during said time tender to the defendant, all the water called for by the contract, in substantial compliance with its terms, then you will find for the plaintiff the hydrant rentals sued for on 100 hydrants at rate of $100 per year per hydrant, payable semiannually, and on 42 hydrants at $50 per annum per hydrant, payable semiannually, for said years, with interest at the rate of 6 per cent. per annum; the amount of said hydrant rentals, with interest at 6 per cent. per annum, calculated to this day, being $————.' On the 25 hydrants claimed for under section 8 of contract, I charge you that you will find nothing one way or the other in your verdict. I have taken up the three issues that I thought proper to present to you as the law, and have directed a verdict for plaintiff on the first two issues, leaving to you the consideration of the third issue; that is, whether or not the company substantially complied with its obligations in relation to supplying and furnishing and keeping on hand the water it has contracted to furnish to those 142 hydrants. You remember the testimony on that issue, and you will find what your judgment may be on that issue of fact. If you find compliance, substantially, you will find for the plaintiff. If you find no compliance, substantially, you will find to the contrary. Measuring the testimony—weighing the testimony—on that issue, you will keep in mind all the time that a substantial compliance on the part of the plaintiff is sufficient to entitle it to recover. If you find for the plaintiff, you will find this: $100 on 100 hydrants for each of these years, with interest thereon. You will find next for 42 hydrants at $50 for each of these years, with interest thereon. Now, that calculation you can make by keeping this suggestion of the court in mind." Thereupon the city, having at the proper time reserved exceptions, sued out a writ of error; and the receiver, having also excepted in proper time, sued out a cross writ of error.

V. L. Brooks, D. W. Doom, and S. R. Fisher, for city of Austin.

T. M. Gregory, John D. Rouse, and Wm. Grant, for E. C. Bartholomew and Joseph Nalle.

Before SHELBY, Circuit Judge, and NEWMAN and TOULMIN, District Judges.

NEWMAN, District Judge, after stating the facts as above, delivered the opinion of the court.

The first and most important question for consideration in this case is that raised by the contention that the city, by the construction of waterworks of its own in 1895, violated the contract which it entered into with the City Water Company in 1882, to the wrong and damage of its successor, the Austin Water, Light & Power Company. The claim is that it was necessarily implied in the terms and provisions of the contract referred to that the city would not itself erect a system of waterworks, and thereby, to a large extent, destroy the value of the property of the City Water Company. Reliance is placed largely, perhaps mainly, on the case of City of Walla Walla v. Walla Walla Water Co., 172 U. S. 1, 19 Sup. Ct. 77, 43 L. Ed. 341. Much stress is laid also on the recent case of Southwest Missouri Light Co. v. City of Joplin (decided by Judge Philips, in the circuit court of the United States for the Western district of Missouri in March, 1900) 101 Fed. 23. In this latter case the pertinent authorities are cited and reviewed, and in its reasoning and conclusions it is undeniably favorable to the contentions of the receiver in this case. In the case of City of Walla Walla v. Walla Walla Water Co., supra, there was an express stipulation that the city would not erect waterworks of its own, although it is true that the reasoning of the court and the conclusions reached are not based entirely on this stipulation. We think, however, that the recent case of Bienville Water-Supply Co. v. City of Mobile, 175 U. S. 109, 20 Sup. Ct. 40, 44 L. Ed. 92, being later than the Walla Walla Case, and more like this case in its facts, is more pertinent here. In this latter case the court affirmed the judgment of the circuit court in dismissing a bill which set up on behalf of the Bienville Water-Supply Company against the city of Mobile substantially the same facts which are relied upon by the plaintiff here. The effect of this decision by the supreme court in the case of Bienville Water-Supply Co. v. City of Mobile is emphasized as authority in this case in favor of the right of the city of Austin to erect waterworks of its own by the opinion filed in the circuit court by Judge Toulmin (95 Fed. 539), which opinion was in review in the supreme court, and apparently fully approved. The syllabus of the opinion in the circuit court is as follows:

"A contract between a city and a water company, chartered and given the right to lay its mains in the streets of the city by an act of the legislature which merely bound the company to maintain a certain number of fire hydrants, for which the city agreed to pay a specified rental for a term of years, and fixed a maximum price, beyond which the company agreed it would not charge for water furnished for domestic use during the term, but which contained no grant of any privilege to the company, and no contract for furnishing water to the inhabitants of the city, nor agreement that the city should not do so, is not violated by the erection or purchase of waterworks by the city for the supplying of water to its inhabitants and for its

own use, and affords no ground for an injunction to restrain the city from so doing in pursuance of authority contained in its charter: the city not having refused to pay the stipulated rentals."

But it is not necessary to further elaborate this question, as it is res judicata in this court. In the former opinion in this case (85 Fed. 359), by Judge Pardee, it is said:

"The contract on which this action is based is a grant and privilege for a period of 20 years to the City Water Company to supply water to the city of Austin, and the inhabitants thereof, with the right of extension under certain named conditions. The grant is not in terms an exclusive one, and. so far as the language used is concerned, there is nothing to hinder the city of Austin from erecting other and competing works, nor from granting to others the right to use the streets, nor from contracting with others for the furnishing of more water, as the needs of the city may require. It is very well settled that in contracts with states or municipalities conferring powers, grants, or privileges on private corporations affecting the general rights and interests of the public, the grant or privilege must be clearly conferred; all implications, doubts, and ambiguities being resolved against the grant or privilege claimed,"—citing Richmond, F. & P. R. Co. v. Louisa R. Co., 13 How. 71, 81, 14 L. Ed. 55; Rice v. Railroad Co., 1 Black, 358, 380, 17 L. Ed. 147; Bank v. Skelly, 1 Black, 436, 446, 17 L. Ed. 173; Stein v. Water-Supply Co., 141 U. S. 67, 80, 11 Sup. Ct. 892, 35 L. Ed. 622.

To the same effect is the decision of the supreme court of Texas in City of Austin v. Nalle, 85 Tex. 520, 22 S. W. 668, 960.

We shall adhere to the former ruling of the court on this question, which disposes of the claim of the receiver for general damages against the city for breach of contract.

It is next contended on the part of the receiver that the court erred in refusing to allow him to recover for the 25 hydrants at $50 each. The second clause of the eighth section of the original contract between the city of Austin and the City Water Company and its assigns is relied upon as the basis for this claim of rental on the part of the receiver. It is as follows:

"The said city of Austin shall have the right to erect and connect twenty-five fire hydrants, with the main, at any time, under the provisions of this contract, at the expense of said water company, and use the same for the prevention and extinguishment of fires, free of charge: provided, always, that the city of Austin shall first pay a rental on the first one hundred (100) hydrants contemplated in this contract."

It is urged on behalf of the receiver that this provision was inserted in the contract for the purpose of inducing and insuring prompt payment of the rent for the 100 hydrants, as this was necessary to enable the water company to erect and maintain the 25 hydrants for which the city was to pay nothing. Hence it is insisted that payment of the rent of the 100 hydrants was a condition precedent to the right of the city to enjoy the free use of the other 25 hydrants. We are of opinion that the receiver cannot claim on behalf of the water company payment for the 100 hydrants, and at the same time demand payment for the 25 hydrants which were to be furnished free on condition that the 100 hydrants were paid for. The receiver could very well demand payment for the 25 hydrants if he was not at the same time insisting on the contract price of the 100 hydrants. We cannot compel compliance with the terms of the contract, and at the same time require that to be done which was stipulated for in the

107 F.—23

event the contract was not complied with. We think the ruling of the court below on the demurrer to this item, and in disallowing the same in the charge to the jury, was correct.

We come next to the consideration of the exceptions of the city to the right of the plaintiff to recover the rental for 142 hydrants. The verdict in favor of the city was for 100 hydrants at $100 per annum each, and 42 hydrants at $50 per annum each, for the years 1896, 1897, and 1898, with interest at 6 per cent., aggregating $39,925. The 100 hydrants were expressly provided for in the contract, by section 6. The 42 hydrants were erected and put in under a provision of section 7 of the contract. These latter hydrants were to be erected as mains were extended, and were to be paid for at the price indicated.

It is first claimed on behalf of the city that it had no power to enter into the contract originally with the City Water Company. The charter of the city of Austin (article 6, § 7) gives the city authority "to construct water works, gas works, and street railroads within or beyond the city limits, or both; to provide the city with water and gas, and to erect hydrants, fire-plugs and pumps in the streets, to erect the necessary machinery, lamp posts, &c. for lighting the city within and beyond the limits of the city, for the convenience of the inhabitants of the city and the environments"; and the twentieth section of the same article empowers the city "to provide for the prevention and extinguishment of fires," etc. For present purposes it is only necessary to ascertain if the city had authority under these charter provisions to rent hydrants. After giving the city authority to construct waterworks, etc., within or beyond the city limits, or both, comes a semicolon; then the section proceeds: "to provide the city with water and gas, and to erect hydrants, fire-plugs, &c. in the streets"; and then, as if to emphasize that authority more strongly, in the twentieth section it is authorized "to provide for the prevention and extinguishment of fires." Independently of the general provision of the Revised Statutes of the State of Texas (article 706), we think there can be no question that the charter itself gave the city ample authority to enter into this contract and to carry out the same, so far, certainly, as is material in the present case.

It is next contended for the city that the contract between the city and the City Water Company was not assignable, and that the Austin Water, Light & Power Company consequently was not authorized to execute the same, or to require performance on the part of the city of the terms of the contract. Whatever may have been the merits of this contention, if made at the time of the transfer and sale by the City Water Company to the Austin Water, Light & Power Company, we think it is too late now for the city to raise this question. The sale and transfer was made in June, 1887, and from that time until the 31st of December, 1895, the city accepted performance of this contract from the new company and paid for the water without question. Thus for more than eight years the city acquiesced to the fullest extent in this assignment, and, having allowed the new company during all these years to perform the contract, it cannot now repudiate the new arrangement and claim that it is illegal. If there was

**any** question about the power of the city to make the contract originally for the rent of the hydrants, there might be some question as to its power to impliedly agree to accept a new party to carry out with it the rental contract. But, assuming such authority to make the contract originally, the city, like an individual or a private corporation, may bind itself by implied contracts. Dill. Mun. Corp. (4th Ed.) §§ 451–459.

It is agreed as part of the facts in this case that:

"On the 22d of June, 1887, the Austin Water, Light & Power Company, also a domestic corporation of the state of Texas, was incorporated under the general laws of the state of Texas, to exist for a term of fifty years. The purpose of its incorporation was to supply water, electric light, and power to the inhabitants of the city of Austin and its vicinity, for public and private use." And further: "After the incorporation of the Austin Water, Light & Power Company, and after the establishment by the City Water Company of its said waterworks plant, the said City Water Company, on or about the 28th day of June, 1887, executed certain instruments purporting to sell, convey, transfer, set over, and deliver to the Austin Water, Light & Power Company its waterworks plant, and, all and singular, its property, rights, contracts, privileges, and franchises. That at all times since said date the Austin Water, Light & Power Company, its officers and agents, have exercised dominion and control over the waterworks plant of the City Water Company, and over, all and singular, the property, rights, contracts, privileges, and franchises of the City Water Company; and since said time the City Water Company has had no waterworks plant, equipment, or appliances wherewith to furnish water to the city of Austin or its inhabitants, other than the ones it undertook to convey as above set out."

It appears, therefore, that the City Water Company transferred to the Austin Water, Light & Power Company its contract with the city of Austin for the rental of hydrants, and that the city acquiesced in this transfer without question, so far as the record shows, and that during all this period, as found by the verdict of the jury, the Austin Water, Light & Power Company complied substantially with its contract with the city to furnish the hydrants with water. It makes a clear case of consent on the part of the city to the transfer of the contract, and a consent which we think is binding. It is urged, however, that this contract is not one which could be enforced against the city, unless it could be also enforced against the water, light and power company, and that the company is not bound by, and could not be held to a compliance with, the contract. We do not think this is true. The new company purchased from the old company its property, rights, contracts, privileges, and franchises, and went forward at once to carry out the contract with the city. We see no reason whatever for the claim that the obligations of this transferee company and the city were not correlative. If, as we believe, under the facts in the case, the city can be required to pay for the water, we think the Austin Water, Light & Power Company could be required to furnish it. The case of Fergus Falls Water Co. v. City of Fergus Falls (C. C.) 65 Fed. 587, was a suit for the rent of hydrants, and is interesting in connection with the question raised here. One sentence in that decision is exceedingly appropriate, as follows: "The law does not favor the idea that a man shall abide by a contract when it is advantageous to him, and repudiate it when it becomes irksome."

The contract between the city and the City Water Company gave

the city the right at the expiration of 10 years thereafter to purchase the waterworks, and, after providing the method for bringing about such purchase, stipulated that, in case the city did not purchase the waterworks, "then all the rights and privileges of this contract granted to said City Water Company shall be extended to said company, its successors or assigns, for a further term of twenty years thereafter." It is urged on the one hand that this expression, "its successors or assigns," was used in the sense which indicated that there might be successors and assigns of the City Water Company at the time the city took advantage of this option, which would imply the understanding and agreement that the contract was assignable at any time. On the other hand, it is urged that this only contemplated that the new contract might be made with a successor or assigns, or that such new contract might be itself afterwards assignable. We think the right of the Austin Water, Light & Power Company to collect the hydrant rentals exists, for the reasons given above, without deciding this latter question, which we shall not undertake to discuss.

Other errors are assigned, which need not be considered, for the reason that the case is controlled and must be determined on the undisputed facts and the law applicable thereto, as has been indicated. The judgment of the circuit court was right, and should be affirmed.