## MONTGOMERY COUNTY v. COCHRAN et al.

## COCHRAN et al. v. MONTGOMERY COUNTY.

### (Circuit Court of Appeals, Fifth Circuit. November 16, 1903.)

### No. 1,296.

**1. SECOND APPEAL IN SAME SUIT—QUESTIONS REVIEWABLE.**

    A second appeal to the Circuit Court of Appeals in the same suit brings up for consideration only the proceedings of the Circuit Court after the mandate was sent down on the first appeal, and no question decided on such appeal can be reviewed.

**2. DEPOSIT OF CHECK IN BANK—EFFECT OF.**

    When, in the absence of fraud, a check is presented in bank by the payee, and received as a deposit, and credited on his account in the bank, the check is paid. The transaction is the same in effect as if the cash had been handed to the payee, and by him returned to the bank. This result does not depend on the amount of cash in the bank being equal to the check, nor on the financial condition of the bank, as shown later on a settlement of its affairs after insolvency.

**3. PUBLIC OFFICERS—ACCEPTANCE AND CONVERSION OF CHECK BY COUNTY TREASURER—LIABILITY ON BOND.**

    Where a county treasurer in Alabama accepted and receipted for, as money, a check of a bank, drawn on itself, for the purchase price of bonds sold by the county, the proceeds of which he was required by law to receive and keep in his official capacity, and deposited such check in the bank on which it was drawn, receiving credit therefor, and charging himself with the amount on his own books, he is responsible on his official bond for the full amount of such check, it being the law of the state that a deposit of funds in a bank by a treasurer constitutes a conversion thereof; and it is no defense, in whole or in part, to an action on his bond by the county, that the bank was insolvent, or that it had insufficient money on hand to pay the check, and that he could not, by the exercise of the utmost diligence, have collected more than a small part of it.

**4. SAME—ACTION ON BOND—ACCRUAL OF RIGHT OF ACTION.**

    Under Code Ala. 1896, § 2796, by which limitation begins to run in favor of the sureties of a public officer "from the act done or omitted by their principal which fixes the liability of the surety," a county may maintain an action against its treasurer and his surety to recover money which he has converted by depositing the same in a bank, although such treasurer is still in office.

In Error and Cross-Error to the Circuit Court of the United States for the Middle District of Alabama.

See 121 Fed. 17.

Wm. L. Martin, John G. Finley, and Jesse F. Stallings, for plaintiff in error and cross-defendant in error.

Edgar H. Gans, Thomas A. Whelan, Thomas H. Watts, and Alexander Troy, for defendants in error and cross-plaintiffs in error.

¶ 2. See Banks and Banking, vol. 6, Cent. Dig. § 307.

Before PARDEE, McCORMICK, and SHELBY, Circuit Judges.

SHELBY, Circuit Judge. This case has been tried twice in the Circuit Court. It is before us for the second time on writ of error sued out by Montgomery county. It is an action brought by Montgomery county, Ala., against John J. Cochran and the Fidelity & Deposit Company of Maryland, a corporation chartered under the laws of Maryland. On being elected treasurer of Montgomery county, Cochran gave bond in the sum of $120,000, with condition to faithfully discharge the duties of such office, and the Fidelity & Deposit Company became surety on his bond. With the approval of his surety, Cochran appointed John P. Kohn his agent, with full authority to act for him as treasurer in the receipt and disbursement of money. The Legislature of Alabama passed an act to authorize the board of revenue of the county to issue bonds of the county, for an amount not to exceed $100,000, for improving the public roads. The board was authorized by the act to sell the bonds. The treasurer was made responsible for the safe-keeping of all the proceeds accruing from the sale of the bonds which may come into his hands in his official capacity, the same as for other funds or money in his hands as such treasurer. Under other statutes of the state, it was made the duty of the treasurer to receive and keep the money of the county, and disburse the same according to law. And official bonds are by other statutes made obligatory on the principal and surety thereon for the faithful discharge of any duties which may be required of such officer by any law passed subsequent to the execution of such bonds, although no such condition be expressed therein; and the bond is made to stand as indemnity against "any wrongful act committed under color of his office as by his failure to perform, or by the improper or neglectful performance of those duties imposed by law." Under authority of the act referred to, the board issued $100,000 of negotiable coupon bonds, payable to bearer, and sold them January 8, 1901, to Josiah Morris & Co., for $111,109.58. John P. Kohn was an employé of the banking house of Josiah Morris & Co. Charles A. Allen was the clerk of the board which held the bonds, and which was authorized to sell them. Seeking to obtain possession of the bonds, Kohn tendered to the clerk of the board the check of the purchaser of the bonds on the bank of Josiah Morris & Co. for the amount agreed to be paid for them, and the clerk declined to receive the check and deliver the bonds. Kohn then left the presence of the clerk, and later returned and presented to him a receipt, signed by John J. Cochran, county treasurer, by John P. Kohn, his attorney, dated January 8, 1901, acknowledging receipt from the board of revenue of the county of $111,109.58, "proceeds sale $100,000.00 bonds." On presentation of this receipt, the bonds were delivered to Kohn, who delivered them to the bank. They were sent out of the state and sold, and are outstanding against the county. All this occurred on the afternoon of the 8th of January, 1901. The check given for the bonds was deposited by the treasurer January 8, 1901, in the bank of Josiah Morris & Co., and placed to the credit of Cochran, as treasurer, who charged himself with the amount of the check

on his official account and reports. Seventeen days after these transactions, the bank closed its doors and remained suspended. Before the bank was closed, on and after January 8th, warrants to the amount of $5,769 drawn by the treasurer on this fund were paid at the bank. At the time the check was deposited, the amount of cash in bank was about $35,000.

The Circuit Court held on the first trial that these facts did not constitute a breach of the treasurer's bond, and directed a verdict for defendant so far as the fund in question was concerned. A judgment was had, however, for the plaintiff, on that trial, for other funds, amounting to $36,862.92, about which there was no controversy. The county of Montgomery sued out a writ of error to reverse this judgment, because it did not include the proceeds of the sale of the bonds. It was decided here (a) that the statute having provided that the treasurer should be responsible for the safe-keeping of all of the proceeds accruing from the sale of the bonds which. came into his hands in his official capacity, in the same manner that he was liable for other county funds or money in his hands as such treasurer, the words "proceeds of sale" and. "funds or money," used in the statute authorizing the bonds to be issued, are not limited in meaning to coin and bank bills, but include any other medium of payment authorized by general usage, and that the treasurer is responsible on his bond where he accepted a check given by the purchaser of the bonds, and receipted for the same as the proceeds of the bonds; (b) that the effect of the transaction disclosed by the evidence was the same as though the treasurer had received coin or bank bills from the board of revenue as the proceeds of the bonds, and had deposited the same, and that he was liable to the county on his bond as for conversion of the money, it being the law of the state that a general deposit of the county funds in a bank by the treasurer is a conversion of the money; (c) and that if it be conceded, on the facts of the case, that the treasurer had no right to accept the check, or that it was found to be worthless, his acceptance of it, and his receipting to the board for the proceeds of the bonds, by reason of which they were issued and became obligations of the county, amounted to an improper or neglectful performance of a duty imposed by law, and that he and the surety on his bond were liable for the loss resulting to the county. Montgomery County v. Cochran, 121 Fed. 17, 57 C. C. A. 261.

The decision on the former writ of error cannot be re-examined now. "Whatever has been decided upon one appeal cannot be re-examined in a subsequent appeal of the same suit. Such subsequent appeal brings up for consideration only the proceedings of the Circuit Court after the mandate of this court." Supervisors v. Kennicott, 94 U. S. 498, 24 L. Ed. 260. This rule is equally applicable to the United States Circuit Courts of Appeals. Morgan v. Johnson, 106 Fed. 452, 45 C. C. A. 421; Supreme Lodge v. Lloyd, 107 Fed. 70, 46 C. C. A. 153; City of Austin v. Bartholomew, 107 Fed. 349, 46 C. C. A. 327; Board of Commissioners v. Geer, 108 Fed. 478, 47 C. C. A. 450. The decision of this court, therefore, on the first writ of error, was the law of the case, to control and govern the Circuit Court on the second trial. This appears to have been fully recognized

by the learned trial judge. But the controversy on the second trial was on the question of the proper construction of the former decision of this court.

On the second trial, from which this writ of error is prosecuted, there was no material change in the evidence, except that additional testimony was offered to show the insolvency of the banking house of Josiah Morris & Co., in which the treasurer deposited the funds of the county; and, on behalf of the county, the additional fact was proved that the Fidelity & Deposit Company of Maryland knew when it became the surety of the treasurer that the funds that were to be received by him were to be deposited in the bank of Josiah Morris & Co. It was conceded on the second trial that, according to the decisions of this court, there had been a breach of the treasurer's bond. The point of contention was as to the measure of damages. The defendants contended that the measure of damages was the amount which the treasurer, by proper diligence, could have collected on the check which he received and deposited. The trial court sustained this contention, and instructed the jury that the measure of damages was "the amount which the treasurer could have recovered by due diligence if he had used it in collecting the check." "The issues before you, then," added the learned judge, "are, first, having got this check, what could he reasonably have gotten out of it if he had been diligent to collect it next morning, when the bank opened? On that branch of the case, he and his surety are liable for what he could have collected by due diligence—if the whole amount, he would be liable for the whole amount; if any less amount, he would be liable for that—because he breached his bond when he put that check on general deposit, instead of trying to collect it." Proceeding under these instructions, the jury found a verdict, and judgment was entered for the county, for only $67,103.05. The county claimed that, after allowing all proper credits, the amount due it was $96,154.58, and has sued out this writ of error to reverse this last judgment.

The trial court wholly misapprehended the decision of this court, in concluding that it was decided that it was the "duty of the treasurer to receive it" (the check for $111,109.58 for the purchase of the bonds). It was not decided that he was required by law to receive the check as money. He certainly would not be required to so receive a check he knew to be worthless. He would be guilty of gross negligence if he received a check as money under circumstances that would cause a loss to the county, when he had reason to suspect that the check was not good. It is probable that he would receive any check as money at his peril. We were dealing with the case as presented then and now, and we were of opinion, and so held, that, having received the check and receipted for it as money, it was "funds or money" and "proceeds of sale," within the meaning of the act under which the bonds were issued, and therefore within the protection of the official bond of the treasurer. The court below on the second trial properly conformed to the opinion of this court in its charge that the check was "proceeds of sale" of the bonds, and that the treasurer was liable on his bond for the same, but instructed the jury that the measure of damages was the sum that could have been collected on the

check by due diligence. This instruction incorrectly assumed that the treasurer could, without a breach of his bond, receive and receipt for as money an uncollectible check. And it gives no force to the fact that the treasurer deposited the check in bank, and received credit as treasurer on the bank's books for the full amount of it, and charged himself, as treasurer, on his official books and reports, with the amount of it. These facts cannot be ignored. If he had only received the check, and if the facts had stopped there, a question would have been presented on this branch of the case that we are not required to deal with. That the deposit of the check by him in bank was a conversion of it is conceded to be the settled local law of the case. Alston v. State, 92 Ala. 124, 9 South. 732, 13 L. R. A. 659. Such deposit, the bank being solvent, would unquestionably make the treasurer and the surety on his bond liable for the full amount of the check. The contention of the defendant in error is, in effect, that if the treasurer selects an insolvent bank, from which could be collected only 25 cents on the dollar, in which to make the deposit, and the whole fund is lost, he is liable for only one-fourth of it; and, of course, applying the same principle, if the bank selected for the deposit be utterly worthless, the treasurer and the surety on his bond would incur no liability at all. The effect of such rule would be that, to the extent that the deposit was safe, there would be a breach of the bond, but, where it was unsafe and necessarily caused loss, to the extent of such loss there could be no breach and no conversion. By such rule, it would be a conversion and breach of the treasurer's bond to deposit a check in a solvent bank, but no conversion and no breach of the bond to make such deposit in an entirely insolvent bank. If the condition of the bank is to be a factor in measuring the damages (but we think it is not), would it not produce juster results to let the damages be proportionate to the insolvency and loss, and not to the solvency and possible collection by due diligence?

The defendant in error contends that the treasurer could not have collected this check, that by the use of due diligence he could not have obtained actual money to the full amount of it, and that it was in fact the note of the bank where it was deposited. But if all that be conceded, it does not relieve us from dealing with the actual fact of the deposit. If he had deposited it in any solvent bank, and had been credited by the amount, he would have been liable at once, under the local law, for a conversion. It would have been a collection of the check under the local and general law. National Bank v. Burkhardt, 100 U. S. 689, 25 L. Ed. 766; City National Bank v. Burns, 68 Ala. 267, 44 Am. Rep. 138. It is difficult to see why it would not be equally a conversion and a breach of his bond to deposit it in an insolvent bank. In actual business transactions, litigation like this is usually caused by the failure of the bank where the deposits are made; and it would introduce a principle very difficult of application if the extent of the defendant's liability, notwithstanding the credit allowed him on the bank's books, was to depend on the financial condition of the bank at the date of the deposit.

When, in the absence of fraud, a genuine check is presented in bank and received as a deposit, the legal effect is that the check is paid.

The transaction is the same as if the cash had been handed the depositor, and by him returned to the bank. This effect cannot, we think, depend on there being cash enough in the bank at the moment the check is presented to pay it. We find no such limitation of the doctrine in the cases. Banking, we know, is based largely on a system of credits. Few banks, when entirely solvent, could pay in cash checks if presented at once for all liabilities to depositors. Cash is retained in the till sufficient for the transaction of business, with the knowledge of its usual course—that the business is based largely on a system of credits. So the legal effect given the transaction cannot, we think, be limited by the amount of actual cash that Josiah Morris & Co. had on hand at the date of the deposit of the check.

Can the effect of the deposit of the check be limited by the financial condition of the bank on the settlement of all of its business transactions? It cannot, we think, for obvious reasons. There might be cash enough in the bank to pay the check when presented, and yet the bank be insolvent in fact. A bank might continue its business for many days when its financial condition was such that it could not, on liquidation, discharge all of its liabilities; and later, by the appreciation in value of its assets, it might become solvent. We find no authority and no reason for limiting the effect of the deposit by the financial condition of the bank.

In Alston v. State, 92 Ala. 124, 9 South. 732, 13 L. R. A. 659, where it was held that the deposit of the check was a conversion of the amount of it, the bank was insolvent, and the rule was announced without inquiry as to the solvency of the drawer of the check. We said in the former opinion in this case:

"If there was reluctance in applying this rule generally to a deposit in a solvent bank, it should be applied without question under the circumstances under which he deposited this fund."

The statutes that are referred to here are quoted and cited in the first opinion.

On the undisputed facts, we do not think the insolvency of the bank in which the treasurer deposited the check constitutes a defense, in whole or in part, to this action. The treasurer having received the check and receipted for it as money, and having deposited it to his credit, and charged himself, as treasurer, with the sum, and drawn out part of the proceeds, we are of opinion that neither evidence that the check was worthless, nor of the bank's insolvency, will prevent the treasurer and the surety on his bond from being liable for the loss resulting to the county.

The circuit court erred in the charge we have quoted on the question of the measure of damages.

We come now to consider the cross writ of error sued out by Cochran and the Fidelity & Deposit Company. Before the first trial, the defendants demurred to each count of the declaration upon the ground that Cochran was, as shown by each count, still the treasurer of the county of Montgomery when suit was brought, and entitled to remain in custody of all the funds of the plaintiff. The proposition asserted in several ways by the demurrers is that the county "cannot sue its treasurer or its surety for the recovery of the county's money

as long as the treasurer remains in office." These demurrers were overruled, and, on the first trial, judgment was had for the plaintiff for $36,862.92. The defendants did not, from that judgment, sue out a cross writ of error. When the case was reversed by this court and remanded, the same demurrers were again interposed, and were again overruled by the court. On the argument of the cause it was suggested by the plaintiff in error that, the defendants having failed to sue out a cross writ of error from the first judgment, they are now precluded from raising this question which they might have brought up as cross plaintiffs in error when the first judgment was rendered. As that contention is not presented by the briefs on file, we shall not consider it, but will proceed to examine the assignment of error now made.

The contention is that the plaintiff has no cause of action, and no right to sue, because the treasurer is still in office and entitled to the custody of the county's funds. We think the circuit court decided correctly, in overruling the demurrers, that the suit was not prematurely brought. It is provided by statute that actions against the sureties of any public officer must be brought within six years, "the time to be computed from the act done or omitted by their principal which fixes the liability of the surety." Code Ala. 1896, § 2796. The act done or omitted to be done in this case which fixes the liability of the surety was done or omitted on the 8th day of January, 1901. The statute began to run in favor of the surety at that time. Governor v. Stonum, 11 Ala. 679; McDonnell v. Bank, 20 Ala. 313; Governor v. Gordon, 15 Ala. 72.

In Governor v. Stonum, supra, it was held that the responsibility of the sureties on a sheriff's bond commenced, and that the statute of limitations began to run in their favor, from the time the sheriff collected the money on certain executions, and returned them satisfied.

In Governor v. Gordon, supra, it was held that the statute of limitations began to run and the right of action accrued from the date of the default of a notary public in failing to give notice of the dishonor of certain commercial paper as required by law, regardless of the time when the injured party discovered the negligence, or when the damage developed.

In McDonnell v. Branch Bank, 20 Ala. 313, a clerk of the circuit court was sued for money collected by him upon a judgment in his court. The statute of limitation being pleaded, the court said in reference to that plea:

"As to the statute of limitation, it is clear that it did not commence to run until the cause of action accrued, and no cause of action would exist against the clerk who had collected the money until he was guilty of some default in respect to it. If it had been shown he had converted the fund, this would have subjected him to an action, and dispensed with the demand. The statute in such case would begin to run from the time of the conversion."

The fact that the statute of limitations was running against the county in favor of the surety on Cochran's bond strongly indicates, if it is not conclusive, that the county had the right to begin its action.

In Jackson County v. Derrick, 117 Ala. 348, 23 South. 193, Brickell, C. J., speaking for the court, said:.

"The safe-keeping of the moneys of the county, and their disbursement according to law, is the primary duty of the county treasurer—a duty owing to the public, and not to individuals. If there is a breach of the duty, followed by a loss of the moneys, whether the loss results from misappropriation or from waste or conversion, the title to and ownership of the funds determines the right of suit or of action."

It is true that in that case the treasurer whose sureties were sued was no longer in office. No case has been cited directly in point on the question under discussion. The cases strongly indicate that the right of action exists whenever the statute of limitations begins to run, and it seems that there is no doubt that the statute does begin to run in favor of the surety at the time of the breach of the bond.

It is claimed by the distinguished counsel for the cross plaintiffs in error that the case of Sumter County v. Mitchell, 85 Ala. 313, 4 South. 705, is directly in point, and conclusive against the right of action. That case was a bill in equity in the name of the county against the tax collector and the sureties on his official bond, and the county treasurer and his surety. A demurrer was interposed to the bill for want of equity and for multifariousness and for misjoinder of defendants. The demurrer was sustained by the chancellor, and on appeal the decree was affirmed by the Supreme Court. The question as to whether the suit was prematurely brought was not raised by the pleadings. It was conceded, however, by the bill, that a suit could not be commenced by the county, and a money judgment or decree recovered against the treasurer or his sureties, until the expiration of his term of office. In discussing this concession on the part of the pleader, the court said that the concession was "properly" made. The contention made here not being in that case, we do not consider the expression of the judge in delivering the opinion of the court to be an authoritative construction of the statute on this question. It is true that the Alabama statutes (which are set out in the former opinion of this court) show that the treasurer is entitled to the possession of the funds of the county. He is their custodian. It is a mistake, however, to consider this suit as one for the purpose of taking the money of the county out of his hands. On the contrary, the action proceeds upon the ground that the money of the county is not in his hands when it should be; that it has been lost by his negligence, or converted to his own use or to the use of others. The judgment sought by the county will not be in favor of the treasurer, but in favor of the county, and the power of the court will be ample to protect the plaintiff against the suggestion that the treasurer could receipt the judgment. In fact, if the money were collected on such judgment and paid to the treasurer, the presumption is that it would be amply protected by his official bond. Whether he has been required to give a new bond under the statute (Code Ala. 1896, § 3112) does not appear from the record, but it may be safely assumed that such additional bond would be required if necessary, if it had not been already required, before the proceeds of the judgment would pass into his hands.

In State v. Nevin, 19 Nev. 162, 7 Pac. 650, 3 Am. St. Rep. 873, a county treasurer and his surety, in defense of a suit against them, pleaded that the money sued for was lost by robbery, and further that,

the treasurer being still in office, there could be no breach of the bond, except upon failure to pay some lawful order drawn upon funds in his hands. After disposing of the robbery question, the court said:

"The other positions taken by appellant relative to the time when the cause of action could be commenced are wholly untenable. Having admitted the defalcation, and claimed the right to interpose the defense inserted in his answer, the state was not compelled to wait until the close of appellant's term of office before commencing an action upon his bond."

We would, of course, follow a construction placed on the Alabama statutes by the Supreme Court of that state, but we would be reluctant, in advance of such construction by that court, to hold that the right of action did not exist in this case, when the statute of limitations was running in favor of the surety and against the plaintiff.

On the writ of error sued out by the county of Montgomery, the judgment is reversed, and the cause remanded for a new trial, with instructions to proceed in conformity with the opinion of this court. The defendants in error, John J. Cochran and the Fidelity & Deposit Company of Maryland, are taxed with the costs, and mandate may issue immediately.