[Civ. No. 319.   Second Appellate District.—October 21, 1907.]

## OCEAN PARK BANK, Appellant, v. LORA C. ROGERS, and H. C. ROGERS, Her Husband, Respondents.

BANKS—DEPOSIT OF CHECK—CASH NOT AGREED UPON—WANT OF FUNDS —CREDIT CHARGED BACK.—When a check on the same bank is presented to the receiving teller for deposit by a depositor with his passbook, with a deposit slip showing the amount of the check and of other deposits, and the teller enters the amount thereof to the depositor's credit, stamps the check paid and files the same, without any agreement that the check be received as cash, the presumption is that it was received for collection only, and if the drawer of the check has no funds in the bank, the bank may, after the close of business hours, if there are no funds to meet it, in the absence of any element of estoppel, charge the same back to the depositor and return the check.

ID.—ELEMENTS OF TRANSFER OF ACCOUNTS AND CHECK—CUSTOMS OF BANKERS.—To constitute a transfer of the check and accounts of the parties, the check must both be charged to the account of the drawer and credited to the account of the depositor. This may be done at the election of the bank, notwithstanding an overdraft of the drawer. The fact the account of the depositor is alone credited with the check does not of itself operate to transfer the title to the paper, for by the custom of bankers the collection is charged back at once if not paid.

ID.—NOTICE OF DISHONOR BY MAIL—DELAY IN DELIVERY—DEPOSITOR NOT INJURED.—Where the returned check with notice of its dishonor was promptly sent by mail, but by delay of the depositor in going to the postoffice its delivery was delayed, if no element of estoppel appears, and the depositor was not injured by the delay, the mode of service of the notice was immaterial.

APPEAL from a judgment of the Superior Court of Los Angeles County, and from an order denying a new trial.   N. P. Conrey, Judge.

The facts are stated in the opinion of the court.

Tanner, Taft & Odell, for Appellant.

Works, Lee & Works, for Respondents.

SHAW, J.—Appeal from judgment and order denying motion for new trial.

The defendant, Lora C. Rogers, and one A. B. Widney each kept a general deposit account with the plaintiff, which was a corporation engaged in a general banking business at the city of Ocean Park, of which city said Rogers was a resident. About July 19, 1905, and while the accounts of both said Rogers and Widney were overdrawn, Widney in due course of business drew his check upon said bank for the sum of $1,000, payable to the order of Rogers, who immediately went to the bank and, after indorsing the check, entered the amount thereof, with the further sum of $75.35, upon a deposit tag or slip, and with her passbook presented the same to the receiving teller of the bank, who credited her passbook with the amount of $1,075.35, stamping the check paid and returning the passbook to Rogers. Nothing was said regarding said check or deposit by either party. The custom of the bank was to post the checks received for deposit in a bank ledger in alphabetical order, and the $1,000 check was by the bookkeeper credited upon this ledger to the account of Mrs. Rogers, and it was not discovered that Widney's account was overdrawn until the bookkeeper turned to Widney's account for the purpose of charging it with the amount of the check; whereupon he referred the matter to the cashier and the amount of the check was immediately charged back to the account of Rogers, and the check, with a printed notice, "Not sufficient funds," together with a letter to Mrs. Rogers, signed by the cashier, stating "We charge your account $1,000," was inclosed in an envelope, duly addressed and mailed to her at the address written upon the signature card given by her to the bank, on June 10, 1905, when she opened her account. There was no delivery of mail by carrier at Ocean Park, and Mrs. Rogers did not call at the postoffice until July 25th, on which date she received said letter and inclosures, and then learned for the first time that the check was dishonored. From June 10, 1905, to and including July 19, 1905, exclusive of said $1,000 check, Mrs. Rogers deposited with the bank the sum of $15,179.16, and up to and including said last-mentioned date drew from the bank against her account the sum of $16,156.33, leaving her account overdrawn on that date in the sum of $1,377.17, unless credited with the amount of said check; or, if credited therewith, overdrawn in the sum of $377.17. On July 25th she deposited

the sum of $400, reducing her overdraft, excluding said check, to $977.17, for which sum the bank brought suit.

After the deposit of this check, and with knowledge of the fact that his account was overdrawn, the bank cashed a check drawn upon Widney's account, presented by another party, for the sum of $90. Widney made no deposits in the bank applicable to the payment of either check.

The sole question involved is, whether or not the bank received the check without qualification as a deposit of cash to the credit of Mrs. Rogers. If it did, this fact must appear from the acts of the parties, as the record discloses nothing said upon the subject by either party to the transaction.

Upon the foregoing facts, the court found, in effect, that the acceptance of the check was equivalent to a deposit in cash to the defendant's credit, and that plaintiff assumed the payment thereof. In so finding we think the court erred.

The facts in the case of *National Gold Bank etc.* v. *McDonald,* 51 Cal. 64, [21 Am. Rep. 697], are almost identical with those in the case under consideration. McDonald, the defendant therein, and one Barton each kept an account with the bank, both of whose accounts at the time in question were overdrawn. In the regular course of business Barton gave his check upon the bank to McDonald, who presented the check with his passbook to the receiving teller of the bank, who entered therein a credit for the amount of the deposit. About 3 o'clock of the same day (the deposit having been made at 2 o'clock) the bank returned the check to McDonald, notifying him that the same was dishonored for want of funds. McDonald refused to make good the amount of the check, claiming that it had been accepted by the bank as cash. The trial court found that McDonald presented the check for deposit as cash, that the bank so received it and entered the same in McDonald's passbook as cash, and gave judgment for him. Upon appeal, the supreme court reversed the case, saying: "On the motion for a new trial, one of the grounds specified and relied upon was that this finding was not justified by the evidence. It is not pretended that there was any evidence of an express agreement to the effect that the check was offered and received as a *cash* deposit; and the court must have reached that conclusion, as a deduction from the facts above stated. . . . We think the court erred in the deduction, and that the finding is not supported by the evidence."

The fact that the amount of the check, with other sums, was entered upon a deposit slip, that the check was stamped paid and impaled upon a check file, are mere memoranda adopted in aid of the convenient dispatch of business. They do not distinguish this case from the facts in *National Gold Bank* v. *McDonald,* 51 Cal. 64, [21 Am. Rep. 697].

There was nothing said or done in connection with the transaction which supports the conclusion that the bank accepted the check as cash. Had it been drawn upon another bank and payment thereof refused, the bank could have charged it back to Rogers, notwithstanding the fact that she had received credit therefor in her passbook. Why should a different rule apply when drawn upon the bank which receives the check and enters the credit in the passbook? In either case, in the absence of any agreement to the contrary, it is received for collection. If in the one case it be paid, the amount is placed to the credit of the depositor; in the other, if there are sufficient funds to the credit of the drawer, the amount of the check is transferred on the books of the bank from the account of the drawer to the account of the depositor. If upon presentation of the check the account of the drawer is insufficient to cover it, he may nevertheless make deposits during business hours of the day in amount sufficient to pay it, in which case such funds, to the amount of the check, should be transferred to the account of the party presenting the check. If, however, at the close of banking hours on the day when the check is presented the account of the drawer is insufficient to pay it, the bank must then elect to either pay the check itself, charging the amount thereof to the account of the drawer as an overdraft, or return the check to the party presenting it as unpaid for want of funds. If the check is drawn upon another bank, the bank wherein it is deposited has a reasonable time within which to present it for payment, and when drawn upon the bank wherein it is deposited the bank likewise, in the ordinary transaction of business, has a reasonable time to ascertain the condition of the drawer's account, and in the absence of a demand for cash, the bank has until the close of banking hours on the day of the deposit, for the reason that the drawer of the check may deposit funds during banking hours sufficient to pay it. This is not an unreasonable rule, inasmuch as the depositor

may by inquiry ascertain the condition of the drawer's account, or call for cash in payment of the check.

When a check on the same bank is presented to the receiving teller for a deposit by a depositor, with his passbook, together with a deposit slip upon which the amount of the check, together with other deposits, is entered, and said teller receives the same and enters the amount thereof in the passbook to the credit of the depositor, stamps the check paid, and impales the same upon a file, nothing more being said or done. this does not of itself raise the presumption that such check was received as cash or otherwise than for collection, and the bank has until the close of banking hours on the day of deposit to ascertain whether the account of the drawer will permit of a transfer of the amount of the check to the depositor's account. If it will not, then, in the absence of any element of estoppel (and there is none here), the bank may charge back the amount to the depositor and return the check. Notwithstanding the fact that there are no funds to pay the check, the bank may elect to honor it as an overdraft, in which case a transfer of the amount from one account to the other is made upon the books of the bank. To constitute such transfer two acts are necessary, namely: charging the one account and crediting the other with the amount of the check. In the case at bar, it appears that the books of the bank were posted in alphabetical order, and that Mrs. Rogers' account was credited with the check, but no charge or entry was made against the account of Widney for the reason that he had no funds therein. Under these circumstances, the credit given Rogers did not constitute any transfer of the amount of the check to Rogers' account, nor did the act show an intent on the part of the bank to recognize the check as a cash deposit. "The fact that the depositor's account is credited with the amount of the items taken for collection does not of itself operate to transfer the title to the paper; for, by the custom of bankers, the collection is charged back at once if not paid." (3 Am. & Eng. Ency. of Law, 2d ed., p. 817.)

The fact that the bank on the same day cashed one of Widney's checks for $90 is wholly immaterial. It might be willing to advance him a small sum, and for obvious reasons unwilling to grant a like accommodation for another or larger sum. There would be no limit to the hazard of banking un-

der a rule that required it to pay all overdrafts made by one to whom it had extended some slight favor of this character.

On the day of its deposit the check, with notice of its dishonor, was mailed to Mrs. Rogers at her admitted address. She did not call at the postoffice until five days later, when she received it and retained possession thereof until the trial of the case. It is contended by respondent that sending the notice by mail was insufficient, that it should have been given in a manner to have assured its immediate delivery. It is unnecessary to pass upon the sufficiency of the service by mail, for, conceding the depositor to be entitled to notice and that mailing it was improper, it is not pretended that she sustained any damage by reason thereof. In any event, the bank's liability could only extend to the damage which was caused by the delay in sending it through the mail. None being claimed, it is immaterial how the notice was served. There are no facts presented by the record which would constitute an estoppel against the bank, or render it liable for the payment of this worthless check.

We are aware the courts of other states have rendered opinions apparently in conflict with *National Gold Bank* v. *McDonald*, 51 Cal. 64, [21 Am. Rep. 697]. As a rule, however, they are easily distinguishable from the case under consideration. The case of *Oddie* v. *National City Bank*, 45 N. Y. 735, [6 Am. Rep. 160], cited by respondent, is not in point, for the reason that on the day upon which the check was deposited the drawer thereof made a deposit in amount sufficient to cover the check. This rather supports the theory that the rights and liabilities of the parties must be measured by the transactions occurring during the business day as a whole, rather than the particular time of the receipt of the check. In *Montgomery Co.* v. *Cochran*, 126 Fed. 456, [62 C. C. A. 70], the county treasurer in his official capacity accepted a check in payment of certain bonds which he caused to be delivered to the one from whom he received the check. The treasurer was held liable for the amount of the check upon the ground that he received it as cash. We fail to perceive any analogy between the facts in that case and the one at bar.

The judgment and order are reversed.

Allen, P. J., and Taggart, J., concurred.

A petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on December 19, 1907.