[Sac. No. 1964.  Department Two.—March 19, 1913.]

PLUMAS COUNTY BANK (a Corporation), Appellant, v. BANK OF RIDEOUT, SMITH & COMPANY (a Corporation), Respondent.

BANK—DEPOSIT OF DRAFT ON ANOTHER BANK—CREDIT IMMEDIATELY GIVEN DEPOSITOR—DEBTOR AND CREDITOR—INSOLVENCY OF DEPOSITARY—PAYMENT BY DRAWEE.—Where a bank, in opening an account with another bank which at the time was apparently solvent although in fact insolvent, deposited its own draft on a third bank, in which it had a deposit to its credit sufficient to pay the same, accompanying the draft with the request that the amount thereof be placed to its credit by the depositary, and the latter immediately complied with such request, and notified the depositor that the draft had been placed to its credit, and both banks then treated the transaction as completed, the relation created between the depositor and depositary is that of creditor and debtor, and not merely that of principal and agent, and if the drawee bank honors the draft, without notice of the insolvency of the depositary, and payment thereof is received by the latter before it closes its doors on account of its insolvency, the drawee is not liable to the drawer of the draft for the value thereof.

ID.—FRAUD—RECEIVING PAPER FOR COLLECTION BY INSOLVENT BANK—INNOCENT HOLDER OF CHECK.—It is a fraud for an insolvent depositary to receive paper for collection, and no matter what may be the indorsement, the bank acquires no title. But if a check indorsed in blank is transferred to another bank and advances are made thereon in good faith, it can hold the check. The depositor in such case must suffer, that the great rule, where a *bona fide* holder of paper is protected in taking it, may be preserved.

ID.—FACTS SHOWING DRAFT WAS NOT RECEIVED MERELY FOR COLLECTION. The fact that the draft was sent for the purpose of opening a new

account with the depositary, that the latter immediately opened such account and credited the depositor with the amount of the draft, and on the next day sent the depositor for collection a check drawn against it, which the depositor entered on its books to the credit of the depositary, thus reducing the amount of its credit with the depositary by the amount. of such check, and that the depositary sent the draft to the drawee, bearing the indorsement "Pay to the order of yourself, previous indorsement guaranteed," and accompanied by a slip announcing that it was sent "for collection and credit," evidence a contemporary construction of the relations between the depositor and depositary totally at variance with the claim that the draft was received merely for collection.

Id.—Facts Showing Collection of Draft by Depositary.—If it be admitted that such draft was sent by the depositor to the depositary merely for collection from the drawee, the facts that the latter, in payment of the draft, sent to the depositary, with whom it had a credit account, a check drawn on itself, in its own favor, accompanied by a draft on another bank more than sufficient in amount to make such check good, and that such check and draft reached the depositary before it closed its doors, are sufficient to show a collection of the draft. The fact that such draft and check were not at once entered to the drawee's credit on the books of the depositary, was without prejudice to the drawee, and it is immaterial that subsequently, without authority or right, some official of the insolvent bank returned the uncollected draft on the other bank to the drawee.

APPEAL from a judgment of the Superior Court of Butte County and from an order refusing a new trial. J. C. Gray, Judge.

The facts are stated in the opinion of the court.

U. S. Webb, Jesse W. Lilienthal, and Raymond Benjamin, for Appellant.

F. C. Lusk, and A. F. Jones, for Respondent.

MELVIN, J.—Plaintiff sued for the sum of fifteen thousand dollars alleged to be a deposit properly to its credit in the bank of defendant corporation. From a judgment against it and from an order denying its motion for a new trial the Plumas County Bank appeals.

Regarding the facts of this case there is very little dispute. Indeed the bill of exceptions is made up in part of an agreed

statement of facts, those essential to this opinion being as follows:

"On October 28, 1907, the plaintiff bank had on deposit, subject to check, in the defendant bank, over $15,000.00, and the defendant bank had on deposit in California Safe Deposit & Trust Company the sum of $12,505.29, and for several years prior thereto had kept an account with said California Safe Deposit & Trust Co., to the credit of which it from time to time made deposits and from time to time drew checks or drafts on the same."

On October 24, 1907, plaintiff desiring to open an account with the California Safe Deposit & Trust Co., drew its check No. 215 on defendant payable to that corporation (which we will hereafter for the sake of brevity call the Trust Company) for the sum of fifteen thousand dollars, and on the same day deposited the said check in the mail at Quincy directed to the Trust Company. With the check was a letter containing, among other things, the following language:

"We have thought the matter over and have concluded to open an account with you for the present at least.

"Inclosed herewith you will find our draft on the Bank of Rideout, Smith & Company of Oroville, in your favor for the sum of $15,000, which amount you will please place to our credit and send us receipt for the same."

This check and letter were received by the Trust Company on October 28, 1907. Shortly after two o'clock on October 30, 1907, the Trust Company closed its doors. It is also true that (we quote from the stipulated statement) "for and during thirty days prior to October 30, 1907, the said California Safe Deposit & Trust Company was insolvent, but neither party to this action had any knowledge or notice of such insolvency at that time. That said bank, while in fact insolvent during said thirty days paid all its obligations as presented, and as payment was demanded from said bank. That each of the parties to this action had notice and knowledge of the suspension of said bank from and after the 31st day of October, 1907, and that it never resumed business after it suspended on the 30th day of October, 1907. That it has never since resumed business and has been at all times from that date insolvent." E. J. LeBreton was appointed receiver of the insolvent corporation January 14, 1908. During the fol-

lowing month plaintiff demanded fifteen thousand dollars from the defendant corporation but said demand was refused on the ground that payment had theretofore been made.

On October 28, 1907, the manager of the Trust Company wrote to the cashier of the Plumas County Bank. One paragraph of his letter was as follows: "I desire to acknowledge with thanks your esteemed favor of 24 inst., in which you inclose your check on the Bank of Rideout, Smith & Company, Oroville, for $15,000.00 and instruct us to place same to your credit. This has been done and a formal acknowledgment will be sent you." On November 1, 1907, the cashier of the Plumas County Bank telegraphed the defendant to stop payment on the fifteen thousand dollar draft drawn in favor of the Trust Company.

In addition to the stipulated facts the court found:

"That upon the receipt by said California Safe Deposit & Trust Company of said check No. 215 in favor of California Safe Deposit & Trust Company and said letter from said Plumas County Bank to said California Safe Deposit & Trust Company, the said California Safe Deposit & Trust Company credited the same in its cash book being its book of original entry, to the plaintiff bank, and on the same day this credit to the plaintiff bank of said sum in the cash book of the California Safe Deposit & Trust Company was posted from the cash book into individual ledger No. 2 of said California Safe Deposit & Trust Company, said entries showing that the plaintiff bank was upon that day, October 28, 1907, credited with $15,000 on the books of the California Safe Deposit & Trust Company"; that a deposit tag marked "New" and showing a credit of fifteen thousand dollars in favor of the Plumas County Bank was filed among the papers of the Trust Company on October 28, 1907, and that said tag contained, among other things, the following: "In receiving checks on deposit, payable elsewhere than in San Francisco, this bank assumes no responsibility for the failure of any of its direct or indirect collecting agents, and shall only be held liable when proceeds in actual funds or solvent credits shall have come into its possession. Under these conditions, items previously credited may be charged back to the depositor's account. In making this deposit, the depositor hereby assents to the foregoing conditions"; that on the same day the said

check No. 215 was mailed to the defendant attached to the following memorandum:

"California Safe Deposit and Trust Company.

"To Bank of Rideout, Smith & Co., Oroville.

"San Francisco, October 28, 1907.

"Herewith for collection and credit

"Drawn on                                               Amount

"You                                                  $15,000.00."

that on October 29th the check and memorandum were received by defendant marked "paid" and defendant debited plaintiff on its books with check No. 215; "that the plaintiff bank sent the said check No. 215 for $15,000 to California Safe Deposit and Trust Company for the purpose of transferring that sum of money for which it had credit at the Bank of Rideout, Smith & Company to California Safe Deposit and Trust Company, and giving the plaintiff bank credit there for said sum; . . . that when said check No. 215 was received by said defendant bank and said transfer had been made upon the books of said defendant bank and the said sum of $15,000 credited to the California Safe Deposit and Trust Company, said defendant bank knew that its account with California Safe Deposit and Trust Company would be overdrawn in an approximate sum of $2500, and desiring to have no overdraft at the California Safe Deposit and Trust Company's bank, and to keep a balance continually there, it sent to that bank on the 29th day of October, 1907, not only its draft on said California Safe Deposit and Trust Company for the $15,000 item and $48.73 additional thereto to cover other small items, but also sent a cash draft for $5000 in favor of California Safe Deposit and Trust Company on the Mercantile Trust Company of San Francisco"; that on the same day both drafts were placed in the post-office at Oroville contained in envelopes properly addressed to the Trust Company in San Francisco and having the postage thereon prepaid; "that said draft No. 307 for $15,048.73 was received by the California Safe Deposit and Trust Company at or before the hour of noon on October 30, 1907, and the said draft for $5,000 was received by the California Safe Deposit and Trust Company about the hour of noon on October 30, 1907, but the exact time of its receipt cannot be ascertained"; that the draft on the Mercantile Trust Company was not

cashed by the California Safe Deposit and Trust Company, but two days after the suspension of said last named bank the said draft for five thousand dollars was returned uncashed to the defendant bank; that subsequently the receiver of the Trust Company demanded and received from the defendant bank $2,543.44, being the difference between its draft No. 307 and the amount of its former balance with the Trust Company; "that upon the receipt by said California Safe Deposit and Trust Company of said draft No. 307 at about the hour of noon on said October 30, 1907, said draft was passed into the hands of a clerk of said California Safe Deposit and Trust Company, who upon examining the books of said California Safe Deposit and Trust Company found that said books showed at that time a credit to the account of the defendant bank of the sum of $12,705.29 only, and thereupon reported to the manager of said California Safe Deposit and Trust Company the amount of balance shown on said books to be due to the defendant bank, and was then and there instructed by the manager of said California Safe Deposit and Trust Company to hold said draft No. 307 for $15,048.73 over. That thereupon an entry was made upon the pages of the interior collection book of said California Safe Deposit and Trust Company, which showed a copy of the remittance slip accompanying draft No. 307 of the defendant bank, noted as follows: 'Dft Held Over.' That said draft No. 307 was not, before the closing of the doors of the California Safe Deposit and Trust Company canceled, stamped, or in any manner marked, nor was any entry, marking or notation of any kind or character made thereon until after the doors of the California Safe Deposit and Trust Company were closed, to wit, on the 14th day of March, 1908"; that defendant bank was not debited with draft No. 307 on the books of the Trust Company; "that during the entire months of October and November, 1907, and for more than two years prior thereto, it was the custom in the city of San Francisco of the California Safe Deposit and Trust Company and of all other banks in said city, by recommendation of their clearing house, that in receiving notes, drafts and checks on points other than said city of San Francisco, either for collection or credit, that the bank at which said check was deposited for collection should transmit the same

in the usual manner for collection either to the bank on which it was drawn, or to such banks or persons as it might deem reliable, and that the bank to which it was sent might remit by check, draft, certificate or cash for the proceeds of any collection instead of remitting the exact money collected''; that the draft for five thousand dollars on the Mercantile Trust Company in favor of the California Safe Deposit and Trust Company was good and would have been paid if presented; that ''during more than two years prior to October 30, 1907, the defendant bank maintained a deposit with the California Safe Deposit and Trust Company but at no time did the California Safe Deposit and Trust Company have a deposit with the defendant bank; that during said two years the California Safe Deposit and Trust Company frequently sent checks and drafts to the defendant bank, and the letters accompanying some of them read 'For collection and credit,' and the letters accompanying others of them read for 'Collection and returns,' and the letters accompanying still others did not state whether they were sent for 'Collections' or 'Returns,' but in every such case the defendant bank immediately remitted the amount of said collections to the California Safe Deposit and Trust Company, and in all such cases the same practice was pursued as was followed in the case of check No. 215.''

At the outset it may be well to say that we do not think the insolvency of the Trust Company before the actual closing of its doors was a material factor in this case. It is highly probable that some of the officers of that corporation knew of its insolvent condition long before the doors were closed to the public, and if this action were against such officers or some one in privity with them, their fraud would be available to plaintiff if he desired to set aside any transaction with the bank. For example, if the check for fifteen thousand dollars sent by the Plumas County Bank had reached San Francisco after the Trust Company had closed its doors, doubtless it could have been recovered from the receiver. But we are considering the respective rights of two equally innocent parties both dealing with an apparently solvent corporation. As between the plaintiff and the Trust Company the acceptance of the former's deposit by the latter while it was insolvent was a fraud; but it was also a fraud against

the defendant. Neither of these innocent parties can gain any advantage over the other by reason of the fraud of a third party practiced upon both of them. The rule is thus stated by a distinguished author: "It is a fraud for an insolvent depositary to receive paper for collection, and no matter what may be the indorsement, the bank acquires no title. But if a check indorsed in blank is transferred to another bank and advances are made thereon in good faith, it can hold the check. The depositor in such a case must suffer that the great rule, where a *bona fide* holder of paper is protected in taking it, may be preserved." (Bolles Modern Law of Banking, vol. 2, sec. 17.)

The principal and indeed the crucial question in this case is whether the relation between the Plumas County Bank and the Trust Company was one of principal and agent or creditor and debtor. In this behalf appellant cites certain authorities, which we will proceed to examine.

In *Hazlett* v. *Commercial Nat. Bank,* 132 Pa. St. 119, [19 Atl. 55], the plaintiff had deposited his check for five thousand dollars to his account with the Commercial National Bank of Philadelphia. This was drawn against the Penn Bank of Pittsburgh. He was credited with five thousand dollars, and the check was sent to the Penn Bank. It was charged to the account of Mr. Hazlett and the draft of the Penn Bank on the Bank of Republic was sent to the Commercial National Bank. This was refused payment on presentation and Mr. Hazlett was notified of that fact. He then wired the Commercial National Bank that the Penn Bank was "all right" and that its draft "would be paid in a day or two." He added, "Please hold for a few days and if not honored, return it to me." The court held that the defendant bank was his agent and that his order to hold the draft excused and condoned the delay which prevented its collection. The court did use this language which plaintiff here cites: "When the plaintiff drew his check for $5,000 on the Penn Bank of Pittsburgh, and deposited said check with the Commercial Bank of Philadelphia for collection, he made the latter bank his agent. The mere fact that the collecting bank credited him with the check as cash did not alter that relation. This is done daily,—indeed, it is the almost universal usage to credit such collections as cash, unless the customer

making such deposit is in weak credit. If the check is unpaid, it is charged off again, and the unpaid check returned to the depositor.'' The case, however, scarcely solves the problem presented by the one at bar. There the conduct of the parties indicated that the contract was one of agency and that the deposit of the check with the defendant bank did not create the relationship of debtor and creditor. In the case before us, the Plumas County Bank deposited its own check payable to the Trust Company with a request to place the amount to its credit. This was done, and after the manager of the Trust Company had apprised plaintiff of that fact, both parties treated the transaction as completed. Plaintiff's sworn statement to the bank commissioners contained this language: "On October 29th, 1907, the California Safe Deposit and Trust Company received from O'Rourke Eubanks Hat Company, check No. 788, drawn by W. J. Miller, on the Plumas County Bank and in favor of the O'Rourke Eubanks Hat Company for $13.26, and in due course of mail this check was forwarded by the California Safe Deposit and Trust Company to the Plumas County Bank for Collection and credit, and the books of the Plumas County Bank show that this check was paid on October 31st, 1907, and the amount thereof placed to the credit of the California Safe Deposit and Trust Company, thus reducing the amount of their supposed indebtedness to the Plumas County Bank to the sum of $14,986.74.'' That transaction showed as clearly that the plaintiff did not send its check merely for collection, as Hazlett's direction in the cited case from Pennsylvania indicated his understanding that the defendant bank was merely his agent.

*Rapp* v. *National Security Bank*, 136 Pa. St. 435, [20 Atl. 508], was a case in which the check had been refused except for collection. It was a raised check. The drawee paid it, but when the forgery was discovered the amount paid because of the alteration of the instrument, was refunded by the collecting bank, and it was held that said bank should not bear the loss, although the firm that had sent the check by the defendant bank for collection had been credited with the full amount, shown by the face of the forged instrument. The case merely announces the undoubted rule that where a worthless check left for collection has been credited to a de-

positor, the amount involved may be charged back to him when the worthlessness of the paper is discovered. Unquestionably if the check in the case at bar had been valueless, the Trust Company might have charged it back to the Plumas County Bank; but it was perfectly good, as it was drawn on a solvent bank in which the drawer had a balance more than sufficient for the payment of the amount called for.

*Richardson* v. *Denegre,* 93 Fed. 572, [35 C. C. A. 452], contains an admitted *obiter dictum* that "the checks of depositors, in the ordinary course of business with a bank, do not become the property of the bank, and the relation of debtor and creditor is not established, but that of principal and agent prevails up to the time the check is collected and money is received by the bank." The case was decided upon entirely different principles and is of no great authoritative force. In *Henderson* v. *O'Conor,* 106 Cal. 388, [39 Pac. 786], the bank had refused to accept the draft in question as a deposit. After the failure of the bank the receiver collected the amount due upon the draft. The court held that the only relation between the plaintiff and the bank was that of principal and agent, and that the latter had no title to the draft nor to the collected funds. *National Gold Bank* v. *McDonald,* 51 Cal. 66, [21 Am. Rep. 697], was a case in which a depositor presented a check drawn in his favor upon the plaintiff bank.. He was credited in his bank book for the amount of the check, but when the day's business was reviewed it was discovered that the drawer had no funds on deposit. Accordingly the bank charged the depositor's account with the amount of the check. It was held that the transaction of *itself* did not import an agreement by the bank to accept the check as cash. The substance of that decision is that a bank has until the close of business hours for the day to determine whether or not final credit will be given for a check drawn upon and payable by itself. The facts of that case and *Ocean Park Bank* v. *Rogers,* 6 Cal. App. 678, [92 Pac. 879], are almost identical. Neither case goes so far as to hold that no agreement is possible whereby the bank in which a check is deposited may receive it as cash.

In the case at bar, not only had the plaintiff been given full credit by the Trust Company for the check, but the check itself was good, and immediately upon its presentation

to the solvent drawee was honored. It was never refused payment as were the checks in the cases discussed. The plaintiff bank knew nothing of the condition of defendant's account with the Trust Company. What it wanted was credit with the Trust Company for fifteen thousand dollars. That is what it received, and the details of the collection of the amount from the drawee of the check are therefore immaterial.

But plaintiff contends that although the Trust Company opened a deposit account with it, the relation of principal and agent subsisted between them because of the rule announced upon the deposit slip that items previously credited might be charged back to the depositor's account upon the failure of any of its direct or indirect collecting agents, and that it would only be liable when "proceeds in actual funds or solvent credits" should have come into its possession. Respondent concedes that the rule announced exists without any such written evidence, but that the right to charge off bad checks does not affect the bank's title. While the courts are divided upon this question, it is generally held that this right to return checks if they are unpaid does not affect their ownership. (2 Bolles Modern Law of Banking, sec. 22; *First Nat. Bank* v. *Armstrong*, 39 Fed. 233.)

Respondent contends, and we think correctly, that the contract between the plaintiff and the Trust Company made the latter the owner of check No. 215. We have seen that plaintiff sent it for the purpose of opening a new account, and that it recognized the validity of the deposit by crediting the Trust Company with the Miller check. Defendant received the check with an indorsement indicating that the Trust Company was the owner of the paper. This was as follows: "Pay to the order of yourself, previous indorsement guaranteed. California Safe Deposit and Trust Company, San Francisco, California. J. Dalzell Brown, manager." The check was also accompanied by the slip announcing that it was sent "for collection and credit." All of these things, as well as the opening of the new account with plaintiff by the Trust Company, evidence a contemporary construction of the relations between plaintiff and the Trust Company totally at variance with plaintiff's assertion that the check was sent merely for collection.

The matter of receiving and crediting checks has recently been considered by the supreme court of the United States, in *Burton* v. *United States,* 196 U. S. 283, [49 L. Ed. 482, 25 Sup. Ct. Rep. 243]. It became important in a criminal case to know whether checks drawn on a St. Louis bank but credited to the defendant by Riggs National Bank of Washington, D. C., should be regarded as having been received and paid in St. Louis. Mr. Justice Peckham, delivering the opinion of the court, said: ''There was no oral or special agreement made between the defendant and the bank at the time when any one of the checks was deposited and credit given for the amount thereof. The defendant had an account with the bank, took each check when it arrived, went to the bank, indorsed the check which was payable to his order, and the bank took the check, placed the amount thereof to the credit of the defendant's account, and nothing further was said in regard to the matter. In other words, it was the ordinary case of the transfer or sale of the check by the defendant and the purchase of it by the bank, and upon its delivery to the bank, under the circumstances stated, the title to the check passed to the bank and it became the owner thereof. It was in no sense the agent of the defendant for the purpose of collecting the amount of the check from the trust company upon which it was drawn. From the time of the delivery of the check by the defendant to the bank it became the owner of the check; it could have torn it up or thrown it in the fire or made any other use or disposition of it which it chose, and no right of defendant would have been infringed. The testimony of Mr. Brice, the cashier of Riggs National Bank, as to the custom of the bank when a check was not paid, of charging it up against the depositor's account, did not in the least vary the legal effect of the transaction; it was simply a method pursued by the bank of exacting payment from the indorser of the check, and nothing more. There was nothing whatever in the evidence showing any agreement or understanding as to the effect of the transaction between the parties—the defendant and the bank—making it other than such as the law would imply from the facts already stated. The forwarding of the check 'for collection,' as stated by Mr. Brice, was not a collection for defendant by the bank as

his agent. It was sent forward to be paid, and the Riggs Bank was its owner when sent. . . .

"The general transactions between the bank and a customer in the way of deposits to a customer's credit and drawing against the account by the customer constitute the relation of creditor and debtor. As is said by Mr. Justice Davis, in delivering the opinion of the court in *Bank of the Republic* v. *Millard,* 10 Wall. 152, [19 L. Ed. 897], in speaking of this relationship, page 155:

" 'It is an important part of the business of banking to receive deposits, but when they are received, unless there are stipulations to the contrary, they belong to the bank, become part of its general funds, and can be loaned by it as other moneys. The banker is. accountable for the deposits which he receives as a debtor, and he agrees to discharge these debts by honoring the checks which the depositors shall from time to time draw on him. The contract between the parties is purely a legal one, and has nothing of the nature of a trust in it. This subject was fully discussed by Lords Cottenham, Brougham, Lyndhurst and Campbell in the House of Lords in the case of *Foley* v. *Hill,* 2 Clark & Finnelly, 28, and they all concurred in the opinion that the relation between a banker and customer, who pays money into the bank, or to whose credit money is placed there, is the ordinary relation of debtor and creditor, and does not partake of a fiduciary character, and the great weight of American authorities is to the same effect.'

"When a check is taken to a bank, and the bank receives it and places the amount to the credit of a customer, the relation of creditor and debtor between them subsists, and it is not that of principal and agent. This principle is held in *Thompson* v. *Riggs,* 5 Wall. 663, [18 L. Ed. 704], and also in *Marine Bank* v. *Fulton Bank,* 2 Wall. 252, [17 L. Ed. 785]. See, also, *Scammon* v. *Kimball,* 92 U. S. 362, 369, [23 L. Ed. 483]; *Davis* v. *Elmira Savings Bank,* 161 U. S. 275, 288, [40 L. Ed. 700, 16 Sup. Ct. Rep. 502].

"The case of *Cragie* v. *Hadley,* 99 N. Y. 131, [52 Am. Rep. 9, 1 N. E. 537], contains a statement of the rule as follows, per Andrews, J.:

" 'The general doctrine that upon a deposit made by a customer, in a bank, in the ordinary course of business, or

of money, or of drafts or checks received and credited as money, the title to the money, or to the drafts or checks, is immediately vested in and becomes the property of the bank, is not open to question. (*Commercial Bank of Albany* v. *Hughes,* 17 Wend. (N. Y.) 94; *Metropolitan Nat. Bank* v. *Loyd,* 90 N. Y. 530.) The transaction in legal effect is a transfer of the money, or drafts or checks, as the case may be, by the customer to the bank, upon an implied contract on the part of the latter to repay the amount of the deposit upon the checks of the depositor. The bank acquires title to the money, drafts or checks, on an implied agreement to pay an equivalent consideration when called upon by the depositor in the usual course of business.'

"In *Metropolitan Nat. Bank* v. *Loyd,* 90 N. Y. 530, one of the cases referred to by Judge Andrews, Judge Danforth, in speaking of the effect of placing a check to the credit of a depositor in his account with the bank, said that—

" 'The title passed to the bank, and they (the checks) were not again subject to his control. (See *Scott* v. *Ocean Bank in City of New York,* 23 N. Y. 289, and other cases cited in the opinion.)' "

The supreme court of Oklahoma cited the above-quoted case and other valuable authorities in *Hobart Nat. Bank* v. *McMurrough,* 24 Okla. 210, [103 Pac. 601].

We conclude that the judgment of the lower court must be sustained; but even if we should hold that the check in question was sent to the Trust Company for collection, we would be compelled to decide that it was collected. The court found upon sufficient evidence that both the check of the defendant bank upon the Trust Company for an amount exceeding fifteen thousand dollars, and the other draft for five thousand dollars (which was a solvent credit), reached the Trust Company before noon on October 30, 1907, before the latter institution closed its doors. That they were not duly passed through the books to defendant's credit at once is no fault of the defendant. It cannot be prejudiced by mere omissions in bookkeeping. It had complied with every possible requirement by paying the check in the manner usual to the course of business between banks. It is immaterial that subsequently, without authority or right, some official of the insolvent bank returned the uncollected draft for five

thousand dollars to the Bank of Rideout, Smith & Company. Defendant had promptly sent that draft in good faith to meet its overdraft. That was enough. And since plaintiff must look to the assets of the insolvent corporation for the recovery of its proportion of its deposit, it cannot now complain of the return of the five thousand dollars for the very good reason that the overdraft of defendant has since been paid to the receiver.

The judgment and order are affirmed.

Henshaw, J., and Lorigan, J., concurred.

Hearing in Bank denied.