444    APPELLATE COURTS OF ILLINOIS.

National Produce Bank of Chicago v. Dodds et al., 205 Ill. App. 444.

## National Produce Bank of Chicago, Plaintiff in Error, v. R. J. Dodds and Mary Paddock Dodds, Defendants in Error.

### Gen. No. 22,266.

1. BILLS AND NOTES, § 32*—*what does not constitute an acceptance of check.* Where a notice printed in a pass book provides that checks on the bank will be credited conditionally to a depositor and such is the custom in all the banks in the city in which the bank is located, the fact that a check on the bank is entered in a pass book and stamped as payable through a clearing house and is put through the usual bookkeeping methods of the bank for the tracing of the check until the status of the account on which it was drawn may be ascertained does not constitute an acceptance of such check within sections 131, 184, 186, 188 of the Negotiable Instruments Act (J. & A. ¶¶ 7771, 7824, 7826, 7828).

2. BANKS AND BANKING, § 100*—*what are rights of bank as to crediting deposit on debt of depositor.* A bank has the right, as against the holder of a check drawn by a depositor, to apply its credit balance to a debt due from such depositor to itself.

3. BANKS AND BANKING, § 142*—*when bank is not obliged to accept checks against deposited check.* Where a check is deposited with a bank, the latter is not obliged to accept checks against it, until it can be determined in the regular course whether such check will be paid.

Error to the Municipal Court of Chicago; the Hon. EDWARD T. WADE, Judge, presiding. Heard in the Branch Appellate Court at the March term, 1916. Reversed with judgment here and finding of fact. Opinion filed May 1, 1917.

**Statement by the Court.** Plaintiff in error brought a suit to recover the balance of $165.99 with interest due on defendants' promissory note for $300 dated October 27, 1914, and due three months thereafter. After the note fell due defendants claimed that they were entitled to have a check for $166.10 that had been deposited to their account in plaintiff's bank on July 17, 1913, credited on the note, and the court,

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

National Produce Bank of Chicago v. Dodds et al., 205 Ill. App. 444.

before which the case was tried without a jury, so found.

The check was drawn on plaintiff's bank by another of its depositors, the Tomlinson-Humes, Incorporated (herein referred to as the Humes Co.). At the opening of business on July 16th, the Humes Co. had on deposit to its credit $567.75. During the day two other deposits to its account were made, one for $270, the other a check for $1,652.32 drawn on a party in Boston, Massachusetts, which was credited to said Humes Co.'s account and forwarded for collection, making a total book credit of $2,490.07, and checks aggregating $2,119.64 were charged to the account, leaving a book balance of $370.43 at the close of day. During the day said company was reported to be on the verge of bankruptcy. If the Boston check was not good its account was thus overdrawn over $1,000. The bank immediately stopped paying any credit balances on any funds against the uncollected Boston check. · That day or the next morning a petition in bankruptcy was filed against said company, and it being indebted to the bank in excess of its balance of $370.43, the account was closed out by applying the balance to the indebtedness of the bank on the morning of July 17th. No other sum was paid out of the Humes Co.'s account on July 17th. On that morning the check in question for $166.10 was taken by defendants' clerk to the bank with the request that it be certified. The bank refused to certify it, the receiving teller saying that it would go through in the regular course of business. It was then left for deposit. On that day checks on the Humes Co. account that were found not good were charged back and returned to the depositors, and defendants were notified that the check in question was charged back to them because drawn against uncollected funds. Later in the day one of the defendants requested the

cashier "to get him the money represented by the check, if possible," and left the check with the cashier, taking a receipt therefor stating that it was "received for collection July 17th." On the inside of the front cover of defendants' pass book used in making their deposits was the following printed notice which is printed in all pass books of all the Chicago banks, to wit:

"Checks on this bank will be credited conditionally. If not found good at close of business, they will be charged back to depositor's account and the latter notified of the fact. Checks on other city banks will be carried over for presentation on the following day.

"This bank, in receiving checks or drafts on deposit or for collection, acts only as your agent, and beyond carefulness in selecting agents at other points, and forwarding to them, assumes no responsibility."

It was shown to be the custom among all the Chicago banks, including plaintiff's, that when checks drawn on a bank by one of its depositors are presented to that bank by another depositor for deposit they are, in accordance with said notice, credited conditionally to the account of the depositor, and if not found good at the close of the day's business are charged back to his account. In plaintiff's bank all checks were stamped by the receiving teller when received and were then charged by the teller to the bookkeeper, who advises as to the condition of the accounts. The check in question was so stamped and treated. It was also shown to be the custom among Chicago banks to stamp the words "Payable through the Chicago Clearing House" on all checks that are certified and then have them signed and accepted by the authorized representatives of the bank delegated to attend to certifications.

Fred H. Atwood, Charles O. Loucks and Vernon R. Loucks, for plaintiff in error; Harold L. Reeve, of counsel.

EDWIN L. WAUGH, for defendants in error.

MR. PRESIDING JUSTICE BARNES delivered the opinion of the court.

The question is whether under the foregoing state of facts there was an acceptance or payment of the check in question by the bank.

Except as otherwise therein provided, the provisions of the Negotiable Instruments Act applicable to a bill of exchange payable on demand apply to a check (section 184, J. & A. ¶ 7824), and the acceptance of the bill must be in writing and signed by the drawee (section 131, J. & A. ¶ 7771). The act also provides that the certification of a check is made equivalent to an acceptance (section 186, J. & A. ¶ 7826), and that the bank is not liable to the holder of the check "unless and until it accepts or certifies the check" (section 188, J. & A. ¶ 7828). In view of these several provisions, we are of the opinion that neither the entry of the check in defendants' pass book, nor the stamping of it as paid, nor the subsequent bookkeeping methods for tracing the check until the status of the account on which it was drawn might at the close of day be determined, constituted an acceptance of the check within the meaning of the act. These several steps taken after the check was presented for deposit were the usual, if not necessary, methods employed by the bank before it could conveniently determine whether the check could be paid. They were in accordance with the custom of all the Chicago banks, and the depositors having printed notice thereof presumably contracted as such with reference thereto. The very fact that the bank thus gave notice of its method of doing business negatives the intention of an unqualified acceptance on its part. The Negotiable Instruments Act imposes no impediment to the adoption of such methods or to a conditional acceptance of checks. It would greatly impede the

conduct of its business if a bank were obliged in effect to strike a ledger balance as checks are presented before it could safely take another for deposit. It would practically involve an immediate transfer on the bank's books from one account to another, an impracticable, if not an impossible, method of conducting business in large banks with numerous depositors.

While our attention is directed to the case of *American Exch. Nat. Bank v. Gregg,* 138 Ill. 596, as authority on the question as to what constitutes payment of a check, yet that decision was rendered before the enactment of the Negotiable Instruments Act of 1907, and, where inconsistent therewith, is, of course, not controlling. There are features here, too, that were not present in that case. No question arose there relative to a custom or to an implied agreement between the bank and its depositors for a conditional credit of checks given by one depositor to another. On the contrary, the decision recognized the bank's right to reject a check or receive it conditionally.

It was also there said that when the check involved was presented the question was whether the drawer had funds in the bank sufficient to pay it. When the check here in question was presented for deposit there were no funds to the credit of the Humes Co., the bank having already applied its credit balance to a debt due from Humes Co. to itself, which it unquestionably had a right to do. (Morse on Banks and Banking, 3rd Ed., secs. 324, 328; *Sachs v. Sachs,* 181 Ill. App. 342.) At that time the Boston check had been credited to such account only conditionally, and it could not then be determined whether it would be paid. Until that could be determined in the regular course, the bank was not obliged to accept checks against it. Hence, when the check in question was presented for deposit, not only did the bank refuse to certify it, thereby indicating its intention not to

accept it otherwise than conditionally, according to notice contained in the pass book and the custom of the Chicago banks, but there were no funds to the Humes Co.'s credit out of which it could be paid. With knowledge of such conditions it would be strange indeed if the bank should be held to have accepted and paid the check it expressly refused to certify simply because it employed the convenient methods of mere bookkeeping as above referred to. Even defendants in error recognized the bank's right to hold the check until the close of day, for, when notified that the check was not good, they left it with the bank for collection and do not seem to have assumed a different attitude until the time came for the payment of their note subsequently given for borrowed money. As was stated in a very similar case, *Ocean Park Bank v. Rogers,* 6 Cal. App. 678, 92 Pac. 879: "The fact that the amount of the check * * * was entered upon a deposit slip, that the check was stamped 'Paid' and impaled upon a check file, are mere memoranda adopted in aid of the convenient dispatch of business." It was there said that such methods did not raise the presumption that the check was received as cash or otherwise than for collection, and that "the bank has until the close of banking hours on the day of deposit to ascertain whether the account of the drawer will permit of a transfer of the amount of the check to the depositor's account." We concur in that expression of the law, especially as it seems to comport with the provisions of our present Negotiable Instruments Act. Accordingly we think the bank was not liable for the amount of the check and that the judgment of the court should have been for the amount sued for, $165.99, with interest at seven per cent. from January 27, 1915, and a judgment therefor amounting to $190.12 will be entered here.

*Reversed with judgment here and finding of fact.*

Finding of fact.   We find that the plaintiff in error, the National Produce Bank of Chicago, did not accept or pay the check drawn on it by the Tomlinson-Humes, Incorporated, to the order of Paddock & Dodds for $166.10.